JOHN O'NEIL, APPELLANT, VS. FANNIE B. PERCIVAL ET AL., APPELLEES.

1. Real estate purchased by a married woman and to whom a deed thereof is made is her separate legal property.

2. When a married woman, who is the legal owner of real estate, purchases with the consent and co-operation of her husband, materials to be used for the construction of improvements thereon, and the materials have been thus used, a court of equity may apply the rents and income of the property to payment for such materials and appoint a receiver for this purpose.

3. Upon an appeal taken by a complainant from a final decree dismissing a bill in equity, an interlocutory order adjudging certain of the defences urged against the bill to be insufficient will be reviewed at the instance of the defendants though they have not appealed.

4. A judgment dismissing an action at law as to one of the defendants therein because the court of law had no jurisdiction of the cause, and as to the other defendant on account of an improper joinder of defendants, is not a bar to a subsequent suit in equity brought to subject the property of the former defendant, a married woman, to the payment of the same cause of action. Such judgment at law is not a judgment on the merits of the plaintiff's claim as to either of the defendants.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*Randall, Walkers & Foster* for Appellant,

*A. W. Cockrell & Son* for Appellees.

The claim sought to be enforced in this case is for improvements put during coverture upon a half lot constituting the statutory separate estate of the wife.

The defendants below interposed a plea and demurrer to the bill, each of which was overruled ; and thereupon the wife filed an answer, to which the complainant filed the general replication. Proof was taken upon the issue so joined ; and upon the hearing final decree was rendered by the court dismissing the complainant's bill, and the complainant appeals to this court.

To entitle the appellant to a reversal the burden is upon him to show:

1. That, as matter of law, upon the allegations of his bill, he was entitled to the relief prayed.

2. And that, as matter of law, upon the allegations of the bill, *and of the plea*, he was entitled to the relief prayed in the bill.

3. That as matter of fact the allegations of the bill denied by the answer of the defendant, under oath, were so supported as to overcome the denials of the answer, under the rule of law measuring for the trial court, the value of a sworn responsive answer, in testimony so clear and convincing as to rebut and displace the presumption, which this court is bound to indulge to sustain the finding of fact by the court below.

A failure of the appellant to establish, to the satisfaction of this court, *each and every*, these several propositions, results in an affirmance of the decree.

The respondents insist that *neither* of these propositions can be maintained.

The defence interposed by the pleas and the demurrer, both as to the husband and wife, are herein argued and considered for the sake of brevity, as presenting a single defence to the case made by the bill, whether applied as to the husband or wife.

The sufficiency of a plea is determined by accepting every fact stated·in the bill, not denied by the averments of the pleas, as true, and accepting every fact stated in the plea as true. Wilson vs. Fridenburg, 19 Fla., 470.

The validity of a demurrer is determined by accepting as true all the allegations of the bill, which are well pleaded.

The question then is, does the defence made by the pleas and the demurrers, either or both, meet, as a matter of law, the case made by the bill.

· In this connection the court is invited to consider the points of identity as well as the points of departure, in the case as made by the complainant by his declaration at law, and as made by his bill in equity.

Identically the same material alleged to have been furnished forms the basis of his claim for recovery of the identical sum of money demanded of these respondents, in the action at law, and in this action.

It is submitted that the only difference between the suit at law and the suit in equity, *as to the cause of action*, upon which the complainant's title to the recovery of the money of these defendants is based, consists in the flexibility of the contract. Unlike all other contracts with which we have heretofore been acquainted, it was not fixed by the terms, express or implied, of its creation, but partaking of the ambulatory character of a last will and testament, it is

readily adjusted to the varying demands, varying exigencies make upon it. At law it is made to do service as the contract of the husband ; in chancery it is made to do service as the contract of the wife. Whose contract is it ? It is an unvarying rule of pleading, the pleader is supposed to make the strongest ·possible presentation of facts, consistently with the truth, in his own favor ; hence he is required to so state his cause as to meet the requisition of the rule which declares not to exist that which is not stated, or is not clearly inferrible from what is stated. Now, inasmuch as the declaration at law, proceeding upon a contract with the husband, and seeking a personal judgment against him, springing out of *that* contract, does not, in stating that contract, in terms or by necessary implication from what is stated, make it plainly appear that the contract declared on was made by *another* than the husband, the pleader is held to the proposition by an inexorable rule of law, the contract was made *by* the husband, *with* the husband, and *for* the husband.

Thus in the simplicity of the common law rule of pleading, flexibility of statement is never permitted to serve the interest of the pleader.

Therefore, as matter of law, the contract declared on in the suit at law for the materials furnished, was the contract of the husband. The husband, by his demurrer, admitted the contract, as declared on, and the facts in reference thereto, as set forth in that declaration ; and upon this admission, judgment final was rendered in favor of the husband against the plaintiff in that suit.

We submit, then, the plaintiff in that case, the complainant in this, is apart from the principle of *res adjudicata* and as matter of record evidence, estopped *now* from denying the contract, as well as all other facts well pleaded, *as set forth* in that declaration.

What says the law in respect to this state of facts?

1. A judgment upon a demurrer to a declaration or to a material pleading setting forth the facts, is equally conclusive of the matters confessed by the demurrer, as a verdict finding the same facts would be, since the matters in controversy are established in the former case, as well as in the latter, by matter of record; and the rule is that facts thus established can never after be contested between the same parties, or those in privity with them.

2. If judgment is rendered for the defendant on demurrer to the declaration or a material pleading in chief, the plaintiff can never maintain against the same defendant or his privies, any similar or concurrent action for the same cause upon the same grounds as were disclosed in the first declaration; for the reason, the judgment upon such a declaration determines the merits of the cause; and a final judgment deciding the right must put an end to the dispute, "else the litigation would be endless."

Both these propositions are abundantly sustained by authorities, as hereinafter shown in discussing the plea of former adjudication.

As we understand the theory upon which the bill is sought to be maintained, the complainant's solicitors do not deny the foregoing propositions; but conceding their force deny their application, and insist the Circuit Court *as a court of law* had no jurisdiction of the case, as made by the pleadings in the case at law.    We on our part concede, if the Circuit Court, as a common law court, had no jurisdiction of the case made by the pleadings, either as to the husband, or as to the wife, then the transcript appended to respondents' pleas would not support the plea of *res adjudicata*, however valuable it might be as a record evidence of admissions solemnly made operating as an estoppel upon the parties, as hereinbefore shown.

JANUARY TERM, 1889.     123

O'Neil vs. Percival et al.—Argument of Counsel.

But the question recurs, did the common law court have jurisdiction of the case before it, as made by the pleadings?

We say it did have jurisdiction.

There can be no doubt, it did have jurisdiction to render a personal judgment against Alexander K. Percival upon the contract declared on. The transcript shows the court sustained his demurrer in part, and overruled it in part; the plaintiff declined to amend his declaration to meet the views of the court as expressed in its action on the demurrer; and thereupon judgment final was rendered, that defendants go hence without day.

Upon the rendering of this judgment the plaintiff appealed to the Supreme Court, and that Court rendered the following decision:'

"John O'Neill, sole surviving partner of the late firm of Penniman & Co., appellant, vs. Alexander K. Percival and his wife, Fannie B. Percival, appellees. Duval County, Westcott, J.:

"1. The statutes of this State relating to mechanics' liens authorizing an executory contract to be followed by a personal judgment do not embrace married women.

"Judgment affirmed."

The judgment relied on as *res-adjudicata* rendered by the Circuit Court has been affirmed by the Supreme Court. The substance of the decision is expressed in a single head note, prepared by the Justice who made the decision, of which the above is a literal copy as published.

We submit the proposition is settled in Florida that a personal judgment against the husband or a personal liability which may be matured into a personal judgment, is a necessary foundation upon which to create a lien enforcable against the separate estate of the wife. Admr. of Jno•

Smith vs. Poythreas, 2 Fla., 92; Harwood vs. Root and wife, 20 Fla., 941.

It cannot, it seems to us in the light of these decisions, be doubted that where a condition of facts exists, under which the personal liability of the husband is defeated or never existed, the liability of the wife's separate property is also defeated, or never existed. If indeed it shall be held that the contract was such as not to bind the husband personally, any other rule than the one above insisted on would produce the anomally of the special class of property known as separate property of the wife under the Constitution and Laws of Florida, property in which, as shown by the answer of the wife, the husband has much the larger interest, the husband having the whole usufruct, and the wife nothing but a contingent interest, consequent on her surviving the coverture, being condemned to be sold to pay a liability put upon it, not by the husband who owns the entire beneficial interest, but put upon it by the wife, the holder of the subordinate and contingent interest.

Take the case of Hardwood vs. Root and wife, 20 Fla., 941. There the property was ordered, not sold, but sequestrated, to pay a liability put upon it by the joint act of husband and wife, as judicially determined by the court; that is to say, the husband was in so far recognized as the party primarily, as between him and his wife, bound by the contract, as that only the rents and profits, which, under our laws (McGill vs. McGill, 19 Fla., 341, 8th head note,) are the property of the husband, were appropriated to the payment of the debt arising from the joint contract of the husband and wife.

It is clear the plea setting up that the husband was sued in and duly impleaded in, a court of general jurisdiction, competent to ascertain and enforce by a personal judgment his liability, if it existed, upon the contract, the

identical cause of action herein set up ; and that judgment final was therein rendered in favor of the defendant husband, and against the plaintiff, Jno. O'Neil, for his failure to plead over, upon demurrer being sustained to his declaration, is well taken, unless, indeed, a judgment final on demurrer is less potential than a judgment final on the verdict of a jury. As to this, we submit the following propositions as conclusive:

1. The rule of *res-adjudicata* applies not only to judgments rendered after a litigation of the merits in controversy, but to judgments rendered upon default. Gates vs. Preston, 41 N. Y., 113 ; Blair vs. Bartlett, 75 N. Y., 150 ; and Dunham vs. Bower, 77 N. Y., 76.

(These last two cases are especially valuable in emphasizing the principle " that any fact of allegation which is expressly or impliedly involved in a judgment, is merged in it, and cannot again be litigated.") Glifford vs. Thom, 9 N. J., Eq. 702 ; Buggs vs. Richmond, 10 Pick. 391.

2. The plea of *res adjudicata* applies not only to points upon which the Court was actually required to form an opinion and pronounce a judgment; but to every point which properly belonged to the subject of the allegation, and which *the parties exercising reasonable diligence* might have brought forward at the time. 2 Taylor's Ev., sec. 1513 ; Henderson vs. Henderson, 3 Hare, 115 ; Stafford vs. Clark, 2 Bing. 382 ; Miller vs. Covert, 1 Wend. 487 ; Bagot vs. Williams, 3 B. & C., 241 ; Robert vs. Heine, 27 Ala., 678.

3. It is now settled it makes no difference in principle, whether the facts upon which the Court proceed, were proved by competent evidence or whether they were admitted by the parties ; and that the admission by way of demurrer to the pleadings in which the facts are alleged, is just as available to the opposite party as if the admission

was made *ore tenus* before the jury. Bouchard vs. Dias, 3 Den. 244; Perkins vs. Moore, 16 Ala., 17, and Robinson vs. Howard, 5 Cal. 428.

4. A judgment upon demurrer to the declaration or to a material pleading setting forth the facts, is equally conclusive of the matters confessed by the demurrer, as a verdict finding the same facts would be, since the matters in controversy are established in the former case as well as in the latter, by matter of record; and the rule is that facts thus established can never after be contested between the same parties, or those in privity with them.

5. If judgment is rendered for the defendant on demurrer to the declaration, or a material pleading in chief, the plaintiff can never maintain against the same defendant, or his privies, any similar or concurrent action for the same cause, upon the same grounds as were disclosed in the first declaration; for the reason the judgment upon such a declaration determines the merits of the cause; and a final judgment deciding the right must put an end to the dispute, "else the litigation would be endless." Gould vs. Evansville R. R. Co., 91 U. S., 526; Hutchin vs. Campbell, 2 W. Bl., 831; Clearwater vs. Meredith, 1 Wall., 43; Gould on Pleading, Ch. 9, sec. 42; Ricardo vs. Garcias, 12 Cl. & Fin., 400, and Rex vs. Kingston, 20 State Trials, 588.

There can be no doubt, under the facts set up in the declaration in the action at law, the Circuit Court did have jurisdiction to render a personal judgment against Alexander K. Percival, upon the contract declared on, for the amount which might have been shown to be due the plaintiff under that contract. The transcript appended to A. K. Percival's plea shows: 1, that, by his demurrer, he confesses to be true all the allegations well plead in his adversary's declaration; 2, that the Court sustained this demur-

JANUARY TERM, 1889. 127

O'Neil vs. Percival et al.—Argument of Counsel.

rer ; that is, judicially declared that the plaintiff was *not* entitled to recover ; upon the cause of action, embracing the contract set up in his declaration ; 3, that the plaintiff declined to amend his pleading to conform to the ruling of the Court ; and, nailing his flag to the mast, stood upon his declaration and bore down his cause of action with it ; and thereupon judment final was rendered, that defendant go hence without day. Under all the authorities the plaintiff in that action can never maintain against A. K. Percival or his privies any similar or concurrent action upon the cause of action set up in that declaration. And all the parties to the action, the plaintiff by his declaration averring, the defendants by their demurrer confessing that the contract *was as* set up in that declaration, are alike estopped, being solemnly bound by matter of record, from saying in any subsequent proceeding that the contract was other or different from that set up in plaintiff's declaration.

But the complainant may insist that he sought in his suit at law to enforce a lien ; and that the Court, in that case, merely decided it did not have jurisdiction to enforce that lien. This view cannot be sustained.

The lien therein set up was *a mere* security, the existence of a debt was the *principal* thing, the security for its collection was merely subsidiary. Without the debt there can be no lien. The lien pre-supposes a debt. It was a part, an *indispensable* part, of his case at law, as shown by his declaration, that the plaintiff should establish, should have judicially ascertained by the judgment of that Court, a subsisting legal debt against the defendants in that action as preliminary to the ascertainment and enforcement of a supposed lien for its security. Can the complainant's counsel say that the ascertainment of a legal subsisting debt, upon

that contract, formulated into a judgment against A. K. Percival, as the parties were impleaded before the Court in the common law action, was beyond the jurisdiction of that Court? Suppose we concede, for. the sake of argument, that the ascertainment and enforcement of a lien in addition to the formulation of a judgment, was beyond the jurisdiction of the law Court; this concession cannot help the complainant. Jurisdiction of a court of general jurisdiction is not ousted by the fact that while it is invoked to do something which is especially and peculiarly the province of that court, the recovery of a money judgment upon the proper case made for the recovery of a money judgment, it is also invoked to do something beyond its jurisdiction, if we concede the judicial ascertainment of a lien to be beyond its jurisdiction. In such a case it would be within the jurisdiction of the Court, *and a reversible error*, if it failed to do it, upon a proper case made, to render the judgment and to deny or ignore the lien.

This was the view of the Supreme Court, as appears from the head note of the decision, upon the appeal thereto of the plaintiff from the judgment rendered in the action at law, hereinbefore quoted.

Now the sole element, the existence and enforcement of a lien, the supposed presence of which in the action at law, it is claimed by the solicitors for complainant, defeated the jurisdiction of that court, and rendered its judgment unavailable to defendants as *res adjudicata*, the Supreme Court judicially declares to be absent from that litigation.

The Supreme Court does not decide that the Circuit Court, in the action at law, did not have jurisdiction to determine the question raised upon the pleadings; but it does decide that the law upon the facts disclosed in the pleadings does not create a lien; and that as there was no

lien to be determined, the judgment of the court, rendered upon the pleadings, *in the condition they were then in*, the plaintiff declining to amend them, that the defendants go hence without day, *was right.*

The inference is irresistible, the Supreme Court reached the conclusion to affirm the judgment, not on the ground that the Circuit Court had no jurisdiction to enforce the lien, but upon the ground as the facts set up did not create a lien, the question really raised by the pleadings, the existence of a debt, was such a question as appertained to the jurisdiction of the Circuit Court as a court of law, to determine ; and that, *as that question* was presented in the pleadings, its determination was right.

Under the decision of the Supreme Court, the only question *really* raised by the pleadings below, was a question, pure and simple, of the recovery of money, wholly *unmixed* with a question of lien or trust; a question triable by jury, and cognizable *only* in a court of law.

Hence a final judgment by that court, upon the facts presented, and case made by the pleadings, having jurisdiction of the subject matter, and the parties impleaded before it, must put an end to the dispute, " else the litigation would be endless."

Apart from the views above discussed, the bill is absolutely wanting in equity, upon its own theory.

The bill shows *not* that the husband *and* wife, as in the Harwood vs. Root case, pledged the separate property by an act *in pais*, jointly or severally ; and that the complainant relied upon such a pledge; but the bill *affirmatively* and *positively* shows that so far from relying or acting upon such a pledge, or any act *in pais* by the husband or wife, or any contract express or implied by husband and wife, or

9

either, the complainant was misled by his interpretation of the statute law, and relied upon a supposed mechanics' lien upon the property, given by the statute; which supposed lien was duly recorded in the Clerk's office in the county where the property is situated; and the facts further show the plaintiff persisted in this reliance and this misinterpretation, until it was set aside and corrected by the Supreme Court at his expense.

So far from making the liability of the husband at law " *clear beyond doubt,*" as was, in the opinion of this court, done in the Root case, *no cause of action* whatever is alleged in the bill, against the husband; nor is he alleged, as was alleged in the Root case, to be insolvent.

It is not alleged that the husband was a contracting " party to the contract " sought to be enforced. According to the allegations of the bill, he did nothing, said nothing, received nothing in his capacity as a principal, binding himself personally. He acted, according to the bill, exclusively as agent of the wife, whose estate in that property, whatever that may be, it alone seeks to bind; and it throughout, " *ex industria,*" excludes the idea the husband had anything to do with the transaction *otherwise* than as agent for the wife.

In the Root case, it was because both husband and wife agreed that the property should be bound, and because the husband was insolvent, and because there was no doubt of his liability at law, as a contracting party, every one of which features is absent from this case, according to the allegations of the bill that the interests of husband and wife was subjected to the debt.

But suppose, against the statements of the bill, the complainant relied, not upon a mechanics' lien, but upon the capacity of the wife to charge this improvement upon the

lot and *she intended* so to charge it, the bill is still without
equity.

In determining how far property, situated as this lot was,
is liable for the payment for improvements put upon it,
"It is necessary," says the court, in 7 Paige 13, the case
referred to by this Court, in Root's case as laying down
the true doctrine, "to see what was the nature of the sev-
eral interests therein, at the time the debt was contracted,
and who was to be benefited," &c.

By the terms of the statute, the husband was entitled to
to the whole of the income of this property during cover-
ture. Harwood vs. Root, 20 Fla., 941. This improve-
ment was made for the purpose of increasing the rent and
income enuring to the husband *solely*, and in the language
of 7 Paige, 19, "the contingent interest of the wife in the
income or principal of the estate after the death of the hus-
band was not intended to be benefited." "I can, there-
fore," says the court, "discover no principle, either legal or
equitable, which would charge *those interests* with the pay-
ment for this improvement."

It is submitted, therefore, the bill makes no case against
the husband, because it alleges nothing whatever against
him ; it makes no case against the wife, because she could
not charge the lot proposed to be charged to a greater ex-
tent than if she were a *femme sole ;* and as a *femme sole*, the
several estates in the lot, remaining as they now are, under
the statute, she *could not charge* with her debts an estate or
interest which belonged to another. See 7 Paige, 14.

Take a more general view.

The point *actually* decided in Harwood vs. Root is, where
husband and wife concur in the execution of a note for the
purchase money of personal property sold to the wife, the
title being made to the wife, that equity may, upon appro-

priate pleadings, the husband being insolvent, sequestrate the rents, incomes and profits of the statutory real estate of the wife to the payment of such joint note.

As the court, in that case, nowhere intimated, much less decided, that the husband might by a court of chancery be removed from the care and management of his wife's statutory separate estate, duties imposed upon him *exclusively* by the statutes creating or controlling it, or be denied the marital right, secured to him by law, of receiving, without liability to account, the rents, incomes and profits thereof, through the machinery of enforcing a lien, put upon it by the wife, clothed by the court, *pro hac vice*, with the capacity of a *femme sole ;* the appellant can derive no aid from that case. In the case at bar, according to the allegations of the bill, the contract sought to be enforced was made not by the husband and wife but by the wife. And the *only* issue of fact raised by the pleadings is an averment by the bill, and a denial by the answer that the contract was made by the wife. If the appellant succeeds in establishing before the court that the contract sought to be enforced was the wife's contract, then he is before the court in the attitude of seeking the sale of the husband's property to pay the wife's debt; for the proposition is too firmly imbedded to be now disturbed, in the adjudications of this court, and of the other courts, where similar statutes are in force, that the non-liability of the husband to account to the wife for the rents, incomes and profits, he alone is authorized to receive, invests him with the ownership of the rents, incomes and profits. McGill vs. McGill, 19 Fla., 341 ; 38 Ala., 523, and cases therein cited ; Harwood vs. Root, 20 Fla., 961, *unless the authority of these cases are repudiated.* Indeed in the last case the interest of the husband is not only *distinctly* recognized but is adjudged subject to the

control of the court to pay the debt for which the liability of the husband was declared "undoubted."

Confronted with the constitutional provision, declaring the separate property of the wife "shall not be liable for the debts of the husband," sec. 26, Art. IV; and the statutory provision, "the property of the female shall remain in the care and management of her husband; and that the wife shall not be entitled to sue her husband for the rents, hires, issues, proceeds or profits of said property; nor shall the husband charge for the management and care of the property of the wife; the court in the Root case could only steer clear of the Constitutional Scylla on the one hand and the Statutory Charyodis on the other, by sequestrating the rents and profits, not the wife's, as in that case they would fall within the constitutional interdiction, forbidding them to be sold for the husband's debt, and yet *so far* the property of the husband, as authorized their condemnation to pay the husband's debt.

As the separate property of the wife was put, by the law, in the care and management of the husband and so far made his as to exempt him from accountability for the rent, hires, issues, proceeds and profits thereof; the court was disinclined to break in on the husband's marital management and care, and his right to receive the income discharged from liability to account, by permitting the wife to put, as a *femme sole*, a lien upon it for her debt, the enforcement of which would, of necessity, result in excluding the husband from it altogether; so the court, confining itself to the case in hand, announced the doctrine that if the husband and wife executed a note for the purchase money of personal property sold to the wife, the court would enforce the payment of that note by sequestrating the income of the wife's separate estate.

Conceding the magnitude and novelty in this court of the questions arising on this appeal, we are justified in subjecting to a rigid analysis the reasoning of this court in the Root case, and to consider how far it is sustained by the authorities cited to its support.

It is not necessary to the affirmance of the decree appealed from in this case that the authority of the Root case, as a precedent, should be disturbed; on the contrary, the reasoning, as well as the conclusion of the court in the Root case, as we have hereinbefore shown, compels the affirmance of the decree appealed from here; but as neither the decision nor the reasoning of the Root case have received, as we understand it, the entire sanction, or acquiescence of the bar, and as the decision is directly opposed to a former deliverance of this court. Staley vs. Hamilton, 2d Head Note, 19 Fla., 275, we proceed to examine the principles, the supposed application of which controled the judgment of the court in the Root case. We think. in the light of the adjudged cases, that the statement in the text of the opinion :

"The general doctrine as to the separate estate of a married woman, and as to her power to bind or to charge her separate statutory property, so far as her power exists under the statute as well as under trusts, is that a married woman, possessed of a separate estate, is as to all matters pertaining to such estate, except when she is expressly limited by the instrument which created it, or the statute under which she has title, regarded as a *feme sole,* and may charge or effect it by any act or contract which would be binding at law if she were unmarried," may be accepted as true. It is supported, not only in the case of Todd vs. Lee, 15 Wis. 373, cited to its support, but also by the case of Hooper's Exc'r vs. Smith and wife, 23 Ala., 639; and

JANUARY TERM, 1889.    135

O'Neil vs. Percival et al.—Argument of Counsel.

Wakefield vs. Ravesies and wife, 38 Ala., 518, and the cases therein cited.

These cases were, however, decided under statutes materially different from the Florida statutes. The Alabama act, approved March 1st, 1848, the first act passed in that State securing property to married women as their separate estate, and the Wisconsin statute construed in Todd vs. Lee, conferred upon the married woman the entire estate, legal and beneficial, and the power to dispose of it. They conferred no interest whatver upon the husband, and contained no restriction upon the wife's power of alienation or anticipation ; and as the wife had power at common law over an estate containing these properties, secured to her by contract, the court could perceive no good reason, nor can we, for laying down a different rule for the government of estates, to which the statutory law, separating estates to married women, has affixed the same properties.

But it was *because* and *only* because of these features, the abscences of any interest by the husband in this class of property, and the absence of any restriction on the wife's power of alienation or anticipation, in the statute law, securing to married women their estates ; that the court deduced, by analogy to common law assurances, vesting in married women the same estate, subject to like limitations and conditions, the statute invested them with the power of the wife to charge her estate as a *femme sole*. And it will be observed the power to charge was exercised by the wife in all respects as if she were a *femme sole*, that is without the knowledge, consent or co-operation of her husband. Indeed, as the form of the expression shows, the husband was regarded, *pro hac vice*, as non-existent.

So conceding the general proposition announced in Harwood vs. Root, hereinbefore quoted at length to be correct ;

that proposition in the light of the reasoning of the Wisconsin decision cited to its support, and in the light of the adjudications upon statutes similar to the Wisconsin statutes, cannot support the right of the wife acting solely or conjointly with her husband, to charge a separate estate, as therein sought to be done, created by a statute, which in substance confers the larger interest in the husband and makes express provision as to the manner in which it may be charged or alienated. In the Wisconsin case the court, it seems to us, industriously guarded against its application, as a precedent, to estates of married women other than those held under statute law, which conferred both the corpus and usufruct upon the wife. To avoid misconstruction a foot note is appended to the decision, showing the exclusive ownership of the wife, under the Wisconsin statute, and her power to dispose of it.

The Alabama courts, pursuing a similar line of argument upon the stature of 1848, recognized in the wife, holding under that statute, a power to charge her estate as a *femme sole*. But so soon as a change was made in that statute, and the separate estate of the wife was held, substantially as it is in Florida; and a mode of alienation, which required the joint act of husband and wife, and certain formalities guarding the wife against the coercion of the husband prescribed, in all respects, similar to that prescribed by the Florida statutes; the Alabama courts at once declared that the *power* of the *wife to charge*, as a *femme sole*, engrafted by construction on the former statute, *ceased to exist*. And that the mode of alienation prescribed by the Legislature *was exclusive*. Warfield vs. Ravesies and Wife, 38 Ala., 518. The principle upon which the wife may charge her separate estate in equity *and its limitation*, is thus distinctly put by Pome-

JANUARY TERM, 1889. 137

O'Neil vs. Percival et al.—Argument of Counsel.

roy, in his late work on equity jurisprudence, Vol. 3, Sec. 1123 : "The separate property, therefore, which she holds subject to the restraint upon alienation or anticipation is not liable for any contracts or engagements which she may make." " Furthermore," says Pomeroy, " it is now settled that her contracts can only be enforced against the separate estate, free from such restraints."

But we are confronted with another and perhaps more serious difficulty, in sustaining as a precedent, the authority of the Root case. Conceding the existence of the subtle distinction, which lifts the wife above the statute, prescribing the mode of alienation of her separate estate, by declaring that " the authority to charge the estate therefore, is not an equitable substitute for the authority of a person in her own right to convey, but a substitute for the authority to contract," we submit this distinction can not peform the *same office* for the husband ; he has and always had the authority in his own right, to contract or to convey.

Being a " *baron sole,*" to coin a word, and " *sui juris* " there was no reason, in his case, *in order to give effect to his contracts*, as there was in the case of his wife, that HIS estate should be charged therefor in equity.

Root certainly did not charge his estate by the note which he signed ; if the lien enforced by the Court thereon was put thereon under *an authority* to charge the estate, created by chancery court, and existing *only as a substitute for the authority to contract.*

Root's personal engagement to pay, certainly did not *ipso facto*, create a charge upon his interest in the estate.

Since " in simple language at law, *he can make a contract* resulting in a personal judgment ; " and, since INABILITY to make a contract at law, resulting in a personal judgment,

*is the sole basis upon* which equity creates the lien, as a substitute for the authority to contract.

That Root was personally liable and insolvent, of itself, gave the Court no jurisdiction to sequestrate his estate to pay that liability ; and no lien or equitable charge upon Root's interest was asserted in the bill.    We submit, the reasoning employed by the Court in the Root case, by which jurisdiction in the chancery court was asserted and maintained to condemn the interest of the wife to the payment of the debt sought to be collected, *conclusively* shows that Root's interest, which the Court declared " should be controlled " as well as that of the wife, was under the pleadings, in that case, *beyond* the jurisdiction of the Court to control.

Nor is the difficulty obviated by the suggestion that the chancery court having obtained jurisdiction for one purpose, that is, the enforcement of the lien claimed to be created against the wife's interest, will assert jurisdiction for all purposes.    The rule contains the limitations.    It might possibly render the husband a necessary party in the proceedings against the wife's estate, and, as his personal liability is perhaps a necessary basis upon which to reach his wife's interest, authorize a personal judgment against him ; but it cannot bring the husband's property within the jurisdiction of the Court and authorize its condemnation, in the absence of any lien or other equitable charge against it.

Our justification for this extended argument rests in our persuasion that complications and vexatious litigations will follow an adherence to the opinion and decision of the Court in the " Harwood vs. Root & wife " case.

The argument has proceeded so far upon the assumption that section 26, Article IV, Constitution of 1868, to-wit :

    " *All property, both real and personal, of the wife, owned*

*by her before marriage, or acquired afterward by gift, de-
vise, descent or purchase, shall be her separate property, and
not liable for the debts of her husband,"* does not affect sec-
tions 1, 2, and 3, of the act of March 6, 1845, in force at the
time of the adoption of the Constitution. In McGill vs.
McGill, 19 Fla., 349, this court construes these sections of
the act of March 6, 1845, as " giving to the husband the cur-
rent use and proceeds of the land received during cover-
ture," and this " gift " is deduced from the *non* liability of
the husband to account, there being in the act an express
exemption of the husband from liability to account.

The question recurs, is it within the constitutional compe-
tency of the Legislature to confer upon the husband the
current use and profits during coverture of the " prop-
erty " of the wife, secured or protected by the constitutional
provision before quoted?

Terms more apt to express the entire estate, legal and
beneficial, thus sought to be secured to the wife, than the
words employed in the Constitution, can scarcely be con-
ceived. That which was the wife's before marriage is to be
her " property " after marriage; not only her property, but
" *her separate property.*"

By the common law, which it was the evident purpose of
this provision to abrogate, marriage operates, in and of it-
self, an absolute conveyance to the husband, as fully as if
consummated by deed, founded on a valuable consideration,
of an estate during coverture in his wife lands, and of her
title to such of her personal property as he should reduce to
possession. And so entirely was this property of the wife
vested in the husband that it became his for all purposes,
and was of consequence subject to his debts.

Prior to the Constitution of 1868, the common law, subject
to such modifications as the Legislature might impose, fixed
the marital rights of the husband, in respect to the property

which belonged to the wife before the marriage as well as such property as she might become entitled to thereafter. The Legislature of Florida, by the act of March 6, 1848, as it then had an unquestioned right to do, intervened, and to a limited extent secured to women the legal title to their property notwithstanding marriage. But this statute secured to married women little else than the barren title to their property, leaving its beneficial use and enjoyment in the husband, who was clothed with its care and management. Even this limited protection to married women, in respect of their property, was liable to be at any time withdrawn, in the wisdom or caprice of the Legislature.

Under this condition of legislation existing for twenty years, the convention of 1868, assembled, and sought to put beyond the reach of unfriendly legislation the rights of married women in respect of their property in the provision we have quoted. Had the convention designed merely to protect this class of property from the creditors of the husband, the last clause in the provision would have abundantly secured this purpose. But the convention sought to do more, by words as apt as can well be devised. It protected *her* "*property*" from the claims of her husband.

In the provision we have quoted it will be observed, the object of the solicitude of the convention was not the "*estate*" or "*title*" merely, of the wife which should be secured to her. The act of 1848, section 1, had continued "her title to the same" notwithstanding coverture; but the same act had in substance divorced the "*title*" from the "*use*," and put the "use" in the husband; and had also provided "that the property of the female shall remain in the care and management of her husband." So it was, our Constitution makers of 1868 perceiving that it was not enough that "her title to the same shall continue separate, independent and beyond the control of her husband, notwith-

standing her coverture, and shall not be taken in execution for his debts," made provision adequate and ample against separating the use from the title, and secured to her· "all *property*" owned before, or acquired after marriage by declaring it "*shall be her separate property*."

Now we submit, if the doctrine announced in *McGill vs. McGill* and *Brook vs. Howard* be the law, that is, if the husband is entitled as husband to the use, rents and profits of the wife's estate, it can be vindicated only upon the ground that the terms "*all property owned*" and "*separate property*," as used in the constitutional provision, were employed in a sense, much more restricted than would be imputed to them, or either of them, if found elsewhere than in this particular instrument.

Speaking to the meaning of an enactment by which "all the wife's property is secured to her separate use," the Supreme Court of Alabama, in Barclay vs. Plant, 50 Ala., 516, · says, "And in this sense property means everything that can be owned." "Property," says Rapalje's law dictionary, "also signifies a beneficial right in or to a thing."

Certainly those who made the Constitution of 1868 cannot be presumed, in placing the protection of the property of women *in the Constitution*, and in employing the word "property" instead of "title," as expressive of the subject matter of their solicitude in recasting entirely the phraseology of the statute, and in ignoring wholly those clauses of the statute which have been construed to confer a beneficial use upon the husband, to have intended to follow the policy of the statute of 1848.

RANEY, C. J.: This is a suit in equity to subject the statutory real estate of a *feme covert* to payment for materials furnished for the erection of improvements thereon, and used for such purpose.

Prior to the institution of this suit the appellant had be-

gun and prosecuted, with the result hereinafter indicated, in the Circuit Court of Duval county, an action at law against the appellees on the same cause of action now sued on. The declaration alleged that the materials were furnished by the appellant under a contract made by him with Percival and ratified by Mrs. Percival, and were used in the construction of the building on the lot in question, and that this was the purpose for which they were furnished. That he filed in the office of the Clerk of the Circuit Court of Duval county on February 7, 1884, and within the time prescribed by the statute, a notice of his intention to hold a lien on said building and on the interest of Mrs. Percival in the land on which the same stands, for the amount of his claim; that though Mrs. Percival promised to pay said amount, neither she nor her husband had done so. It prays a judgment of the court directing a sale of the property for the satisfaction of the plaintiff's lien and costs, and a judgment against the defendants for the amount due. In the declaration there were also counts for money due for work and materials furnished for defendants by plaintiff, and for money found to be due from defendants to plaintiff upon an account stated with the ordinary conclusion as to the amount claimed.

To this declaration and each count thereof Mrs. Percival demurred, among other grounds, because she was, at the time of making the alleged contract, and still continued to be, a married woman, and, in law, incapable of making any valid executory contract enforcible by suit at law ; and because the declaration showed that at the time the alleged contract was made she was a married woman, and the owner of the premises upon which a lien was sought to be created by virtue of said alleged contract.

Percival demurred, among other grounds because in respect to Mrs. Percival, the action was a proceeding *in rem*

in which no personal judgment might be rendered, and in respect to himself it was a proceeding for a personal judgment, and hence there was a misjoinder of defendants.

Orders were made sustaining the demurrers as to the grounds stated.

The final judgment is as follows: "Come now the parties by their attorneys in this cause into open court, and the several demurrers of the defendants touching the liability of defendant, Fannie B. Percival, who is a married woman, having been sustained by the court, and it appearing to the court therefrom that this court is without jurisdiction to entertain the plaintiff's claim against said Fannie B. Percival, and the demurrer of said defendant that there is a misjoinder of defendants having also been sustained by the court, the plaintiff declining to amend his declaration in this respect, it is therefore considered by the court that the cause of said plaintiff be dismissed out of said court, and the defendants go hence without day, and have and recover of plaintiffs their costs."

These proceeding at law are set up by Percival in a plea, and by Mrs. Percival in her answer, as a defense to this suit. They were adjudged to be insufficient as a defense by the Circuit Court.

It is clear that the purpose, meaning and effect of the judgment of the Circuit Court in the action at law was to dismiss the action as to Mrs. Percival on the ground that the court, as a court of law, had no jurisdiction to entertain the suit against her, she being a married woman, and, as to Percival, to dismiss it because of an improper joinder of parties. There is as to neither defendant any judgment upon the merits of any claim set up in either count of the declaration.

It is true that in addition to adjudging that the " cause " of the plaintiff be " dismissed out " of the court for the

reasons indicated by the judgment, the words "and the defendants go hence without day" are added but to give to the latter words the purpose or effect of an adjudication upon the merits of the claim as to either Percival or his wife would be entirely antagonistic to the plain meaning of the judgment considered as a whole, which as to Mrs. Percival is that the court had no jurisdiction of the cause, and as to her husband that the claim was sued upon in a manner not entitling it to be considered upon its merits by the court, and that he had refused to amend his proceedings; and hence a dismissal of his case as to both defendants. Agnew et al vs. McElroy, 10 S &. M., 552; S. C. 48, Am. Dec., 772.

No judgment can be available as an estoppel unless it is judgment on the merits. Freeman on judgments, sec. 260. Judgments of non suit, *non pros.* of *nolle prosequi*, of dismissal and of discontinuance are exceptions to the general rule that when the pleadings, the Court and the parties are such as to permit of a trial on the merits, the judgment will be considered as final and conclusive of all matters which could have been so tried. Ibid, sec. 261. Though a judgment on demurrer on the ground that the declaration does not state facts constituting a cause of action may be a judgment on the merits. Ibid, sec. 268. It is clear this is not a judgment upon such ground.

Where the record of the judgment at law set up as a bar to a suit in equity shows that the court of law did not have jurisdiction of the case, there is no estoppel. Mosby *et al.* vs. Wall, 23 Miss., 81; S. C., 55; Am. Dec., 71, and Peques vs. Mosby *et al.*, 15 Miss., 340. The dismissal of a bill in equity because the case made by the bill is one cognizable at law does not bar an action at law on the same cause of action, nor does a dismissal at law, because the case

is one of equitable jurisdiction, bar a subsequent suit in equity.

The proceedings at law are no bar to this suit, and the chancellor did not err in so holding. In O'Neil vs. Percicival *et al.*, 20 Fla., 937 (an appeal from the judgment in the law proceedings referred to) where the principle adjudicated is that the statute of this State relating to mechanics' liens and authorizing an executory contract to be followed by a personal judgment, does not embrace married women, the court says that it, *as a matter of course*, does not propose, by anything said, to determine the rights of O'Neil when he shall seek " a court of equity as a forum in which to establish an equitable charge."

In the opinion filed prior to the rehearing, it was held that the ruling of the circuit judge upon the above proceedings at law as a defence to the suit in equity, could not be considered on this appeal in view of the fact that neither Percival nor his wife had appealed. Having become satisfied that this was error, we granted a rehearing. So. L. I. & Trust Co. vs Cole, 4 Fla., 359; Fairchild vs. Knight, 18 Fla., 770; Foster vs. Ambler, 24 Fla.; S. C., 5 So. Rep., 263.

The petition for rehearing is based solely upon the omission of this court to consider the defense of *res adjudicata*, just passed upon, yet as the membership af this court had undergone such a material change since the former opinion was filed we concluded that it would be proper to rehear the entire case, and have done so.

The contention of counsel for appellees that there has been an adjudication, that Percival was not personally liable for the materials furnished by appellant is overthrown by the conclusion we have announced above, and this removes one of the main premises of his argument.

In Schnabel vs. Betts, 23 Fla., 178, we held that the insolvency of a husband is not a necessary condition to the power of the wife to charge her real estate for improvements thereon. The bill before us does not, even if it properly could do so, seek to bind Percival personally for the materials. There is nothing in the decisions of this State from which, considering the cases as entireties, it can be inferred that the court considered a personal liability on the part of the husband to be essential to an equitable charge of the wife's statutory or legal real property, or the rents and profits of the same, for improvements made on such property. His participation in the transaction before us is sufficient to commit him to an application of the rents and profits of the wife's property to payment for the improvements. Being satisfied with the correctness of the views of the court as expressed in the former opinion by Chief Justice McWhorter as to *this branch of the case* we adopt the second and subsequent paragraphs of that opinion in so far as they relate to it, and they will be reported as our opinion in the premises at this point of this opinion.

The bill alleges that complainant is the sole surviving partner of Penniman & Co., carrying on the business, in the county of Duval, of manufacturing lumber.

That in the month of February, 1883, orator agreed with Mrs. Percival, for a certain price agreed on, a part of which was to be paid in advance, to furnish materials for the construction of a house to be erected upon certain real estate owned by her, in the city of Jacksonville, to-wit: upon lot No. 5, in block No. 80, in said city. That the portion of said price agreed on to be paid in advance, having been paid your orator, between the 26th day of February, 1883, and the 15th day of January, 1884, delivered a large quantity of material, which was used in the construc-

tion of the said house, and that said house now stands completed on said lot.

Your orator further shows that said materials were furnished, and have been used for the improvement of the separate estate of said defendant, Fannie B. Percival, and in consequence said estate has been greatly improved and increased in value; that said materials were furnished by orator upon the credit of the aforesaid separate estate; that on the 29th day of December, 1883, an accounting was had between orator and Mrs. Percival for the said materials furnished, at which accounting there was found to be due $550.00, for which Mrs. Percival gave orator her promissory note, to fall due thirty days after date, of which no part has been paid; that Mrs. Percival is the owner in fee of said lot number 5, in block No. 80, in said city; that Mrs. Percicval is a married woman, the wife of Alexander K. Percival, the other defendant in this suit.

The bill prayed a decree for the sale of said lot and building for the satisfaction of complainant's claim.

The defendant, Fannie B. Percival, filed an answer to the bill. The answer alleged that she married her co-defendant, A. K. Percival, on the 4th day of September 1879, and that said A. K. Percival was, at the time of said intermarriage, and still is, a citizen of Florida; that the east half of said lot was conveyed to her December 14, 1879, by one Jeffreys; that on the 20th of July, 1880, the west half of said lot was conveyed to her by one Hopkins, and that she holds a legal title to said lot. The answer denies that she, or any person for her, contracted with complainant as alleged, or that any of the material for building were furnished to or received by her, but admits upon information and belief that certain material furnished by complainant was used in the construction of a building on said lot.

The answer sets forth very fully the nature of the estate

held by Mrs. Percival in the lot sought to be subjected to the payment of claimant's claim.

It is her separate property by virtue of the statute of March 6, 1845, McC's Dig. pp. 754 and 755, and section 26, Art. IV, of the Constitution. It is unnecessary to decide what interest her husband has in such property, or the effect of the constitutional provision upon said statute. The answer shows that it is not an equitable, but a legal estate vested in Mrs. Percival. The next inquiry is, are the facts set forth in the bill sufficient to authorize the court to declare that the claim of complainant is a proper charge against said property?

Whatever might be the opinion of the court as to the power of the wife to charge her legal estate in any other manner than the one authorized by the statute, if it were an open question, we are of the opinion that it is settled in this State that she can so charge it for any debt incurred by her for the benefit and improvement of said property. Blumer vs. Pollock & Co., 18 Fla., 707; Staley vs. Hamilton, *et ux* 19 Fla., 275; Harwood vs. Root *et ux* 20 Fla., 940.

The allegations and proofs show that Mrs. Percival was, at the time of the filing of the bill the owner of the property sought to be subjected, and that the debt incurred to the complainant was for its improvement, and that such improvement enhanced its value; that complainant delivered the building materials with the understanding that they were to be used in erecting a building on Mrs. Percival's lot, on the assurance of her husband, who stated to him that he was out of business, had no means or credit, and that he was acting as agent for his wife, and that the complainant charged the materials delivered, on his books to A. K. Percival, agent of Fannie B. Percival; that he agreed to extend the credit on the understanding that Mrs. Percival's property was liable therefor. She admits that she knew of these

improvements being built on her property. After the completion of the building she stated to complainant that she generally did in business matters whatever her husband advised, and upon an accounting with complainant gave him her note for $550, the balance due him for the materials used in the construction of the house, the account having at the time been looked over and explained to her by her husband and complainant.

These facts being the case within the operation of the rule laid down by this court in the cases above cited, we are of the opinion that this property should be held responsible for the payment of the complainant's debt.

Without meaning to admit that the *corpus* of the estate of a married woman can not be sold for the payment of a debt of this character, we think that in this case the rents and profits of the property should be subjectd to its payment.

The decree is reversed, and the case remanded with instructions to appoint a receiver to take charge of said property and collect the rents thereof until the amount is sufficient to pay the complainant's claim with interest and all the costs of these proceedings.