JAMES H. NUTT, APPELLANT, vs. E. W. CODINGTON ET UX, APPELLEES.

1. The act of 1885, Chapter 3611, did not require any notice to be given of the lien-thereby secured to mechanics, laborers and material men.

2. If a bill filed by a mechanic against a married woman and her husband to enforce a lien claimed under the act of 1885, Chapter 3611, on the wife's separate property for labor performed and material furnished thereon, contain sufficient allegations to show a proper charge on such estate, it will sustain a decree, upon sufficient proof of the claim, in favor of complainant independent of the lien given by the statute. Whether the statute referred to gives a lien on the separate property of a married woman, not decided.

3. A married woman is incapable of making a contract for labor performed or material furnished on her separate property that will bind her in a personal judgment, but her estate may be charged for such a demand under her contract.*

4. Where it is sought by bill in equity to charge the separate estate of a married woman for labor performed and material furnished in the improvement thereof, it is incumbent upon the complainant to show that the demand sued for was for labor and material furnished on the wife's property, and constituted a proper charge on said estate, and a decree adverse to the complainant will not be reversed when the testimony leaves it in

doubt whether or not such demand was for labor and material furnished on the wife's property, or on other property in which she had no interest.

Appeal from the Circuit Court for Polk county.

The facts in the case are stated in the opinion of the court.

*J. W. Brady* for Appellant.

*Wilson & Wilson* and *Wall & Knight* for Appellees.

MABRY, J. :

A bill in chancery was filed by appellant against appellees, and it alleges, in substance, that in September, 1886, Nutt entered into a contract with E. W. Codington, agent for his wife, Anna V. Codington, through A. E. Pooser, contractor, to furnish material and do the work necessary in plastering a certain dwelling-house situated on Floral avenue, in the town of Bartow. It is alleged that the house and lot on which it is located belonged to Mrs. Codington; that the contract for said plastering was fully complied with and completed in the month of January, 1887, and that there was then due the complainant Nutt, for the material furnished and work done in plastering said house, the sum of one hundred and ninety-eight dollars and ninety-four cents, a copy of the account being filed with the bill, and consisting in a statement that Anna V. and E. W. Codington were indebted to James H. Nutt for lime and laths furnished and work done in plastering house throughout, $198.94. It is also alleged that complainant had filed a lien against the building in the office of the Clerk of the Circuit Court for Polk county, a copy of which is also filed with the bill. The prayer

is that the building be sold and the proceeds applied to the payment of complainant's claim, costs of court, attorney fees and for process.

The answer alleges that E. W. Codington entered into a contract with A. E. Pooser for the erection of a dwelling-house on Floral avenue, but it is denied that said contract was made by E. W. Codington, as the agent of his wife, or that he acted in any way as her agent. It is admitted that the real estate sought to be charged with a lien was the property of Mrs. Codington, but alleged that in making said contract, E. W. Codington acted for and on behalf of himself only, and that it was not the understanding of either of the respondents, or said Pooser, that Mrs. Codington should in any way subject herself or separate estate to any liability concerning said contract. It is admitted that Nutt furnished materials and performed work in the construction of said building, but alleged that, if he made any contract for furnishing said materials and performing said work, it was made with A. E. Pooser, the contractor for the erection of said building, and that Mrs. Codington had no knowledge whatever of said contract, and that Nutt had never given to her or her husband any notice that said material had been furnished or work performed in the erection of said building, or that the contractor was indebted to him (Nutt), and that he looked to the respondents, or either of them, for what was due thereon. It is also alleged that the contractor, Pooser, had been overpaid by E. W. Codington for the entire contract price for building said house before the filing of the lien mentioned in the bill, and before either of the respondents had any knowlege of any claim by the complainant against Pooser; also that but a small portion of the amount sought to be recovered by com-

plainant was for labor actually performed by him, and that if he can recover at all it can not be for any greater amount than that claimed for said labor, as no lien was filed or claimed for materials furnished. After replication and testimony taken, the bill was dismissed on final hearing at complainants cost, and the appeal is from the final decree.

The testimony shows that E. W. Codington made a contract in 1886 with A. E. Pooser to erect a house in Bartow, Florida, on a lot belonging to his wife, Anna V. Codington, and that Pooser entered into a contract with appellant Nutt to furnish the material and do the plastering in said house. Nutt completed his part of the contract by the last of December, 1886, and the bill was filed on the 15th day of December, 1887, for the purpose of subjecting the house and lot to the payment of what Nutt claimed as then due him on the plastering contract. It appears that about the time Nutt completed the plastering, an agreemet was entered into between E. W. Codington and A. E. Pooser, the contractor, by which the building was to be finished under the direction and management of Codington. It seems that he, at this time, had advanced a large portion of the contract price for building the house, and was apprehensive that there would not be enough to complete it, and the agreement was for him in person to pay the hands for the remaining work to be done on the house. There is a conflict in the evidence whether, by this agreement, Codington was to pay the laborers only for work performed after the agreement, or for that done as well before as after, and not paid for by Pooser. Nutt's labor was performed before the agreement was made, and the testimony tends to show that Pooser, the contractor, was paid more than the contract price for building the

house, considering the cost of labor after the agreement. It is shown that Nutt made his contract with Pooser, and not with Codington or his wife, although he (Nutt) says that after doing some of the work E. W. Codington agreed to see him paid. This is denied by Codington. The act of 1885 (Chapter 3611) required no notice to be given of the lien thereby secured to mechanics, laborers and material men, and repealed the section in the act of March 7th, 1877, on that subject. Barbour vs. Van Camp, 26 Fla., 40, 7 South. Rep., 162. The bill in this case has for its object the subjection of a married woman's property to the payment of a claim for improvements placed thereon, and it must be conceded that it was incumbent upon the complainant to show that the demand he sued for was a proper charge on the property. The conditions under which such a claim can be enforced and a married woman's separate property subjected in equity to the payment of debts, has frequently been considered by this court. Thrasher vs. Doig, 18 Fla., 809; Blumer vs. Pollak & Co., 18 Fla., 707; Harwood vs. Root, 20 Fla., 949; Schnabel vs. Betts, 23 Fla., 178, 1 South. Rep., 692; O'Neil vs. Percival, 25 Fla., 118, 5 South. Rep. 809; Garvin vs. Watkins, 29 Fla., 151, 10 South. Rep., 818, and other cases. The married woman not being able to bind herself by contract in such cases, it devolves upon a complainant to show that his demand is such as will be enforced by a court of equity.

If it be conceded here that the complainant had a lien on the house and lot of Mrs. Codington by virtue of the act of 1885 (Chapter 3611), for work done thereon which he could enforce in a court of equity, our conclusion is that the decree dismissing the bill must be

6

affirmed on the testimony in reference to the establish-ment of complainant's claim. He testified that he completed the work, and, "according to Mr. Pooser's account, they took my books when I was sick, and agreed that this amount that we are now suing for was due me on the house, of which I have never received a cent." He was asked if the amount he was suing for was then due him, and stated, "yes, sir, according to their count. I could not understand it on account of having received some money. The money came through Mr. Pooser." He was also asked, on cross-examination, how many yards of plastering there were in the house, and stated, "I can not tell you, sir, just now, as the calculation is laid one side, and I can not find it, but the measurement was satisfactory to Mr. Pooser, and all other parties besides." On re-direct examination, the witness was asked if the amount agreed upon at his room at the time of the settlement made by Pooser and Codington represented what the latter owed him, or what Pooser owed him, on general account, and said, "I was in bed sick, and I had been light-headed for two days, but was better on that day than I had been. They told me that they had come to settle up their affairs on that house. I told them that I was not in a fit state to do any figuring that day, but Mr. Codington was fully bent on having us settle on that day, so I told him that my books were in my drawer, and that they could reckon up the money that I had received on that job. After figuring it up there was fifty dollars that Mr. Codington claimed he had paid to Pooser, and that the money came to me from Pooser with the understanding that the money came from the Gold Block. I saw that things were not going very satisfactory, and with Mr. Pooser owing me so much money, I was glad to settle in almost any

kind of way, and I agreed to let them go on with their settlement. They took the amount of yards of plastering and the amount of bricks that were used on that house, and I agreed to stay by their figures, and Mr. Pooser gave me the amount of their figures, for which amount I am now suing." It is shown beyond question that Nutt had been working for Pooser on other contracts, and that there was a general unsettled account between them. Codington testified that he was present at the settlement spoken of by Nutt, and did some of the figuring himself, and had the figures at the time of testifying. He stated that the amount Nutt and Pooser agreed there was due upon the house was not correct. He says: "I find the amount inaccurate as he (Nutt) has it, the dollars being one hundred and eighty-nine, instead of one hundred and ninety-eight (the amount sued for). I find the amount figured due him at that time on general account to be one hundred and seventy-eight dollars and sixty-one cents, leaving the amount of ten dollars and forty cents, which he claimed on my house, over the full amount which was decided was due him on general account from Mr. Pooser." The only other witness examined was Pooser, but his testimony is very indefinite as to whether or not the claim made by Nutt was for work on the Codington house. He was asked if he knew the amount of work that Nutt did on that building, and said: "No, sir; I do not; I am not prepared to answer that." He was also asked if the figures given by him at Nutt's room when he was sick, represented what was due for work and material furnished Codington, and replied as follows: "I can not say that I can. Mr. Codington came to me claiming that Mr. Nutt had made an over-charge in his brick account. He and I then went and counted the brick in the bulk as near as

we could, and there was no mistake, there and within
the plastering was all right.  As I had been paying
Mr. Nutt on other bills, we went to see Mr. Nutt to
ascertain the exact amounts that had been paid to
him by Mr. Codington and myself.  I carried my
books to Mr. Nutt's bed room.  Mr. Nutt was in bed
when we got there, and we found out just how much
had been paid him according to his statements and
my own.  I turned the two statements over to Mr.
Nutt and Mr. Codington.''  From Nutt's testimony it
appears that he was not relying upon his own knowl-
edge of the work done in the house, but upon the
statement given him while sick.  Pooser and Coding-
ton made up a balance from the books then produced,
but Pooser disclaims any knowledge of the exact
amount of work done by Nutt on the house, nor does
any one testify that the books, from which the state-
ment was made, were accurate and properly kept.
There is a difference between Pooser and Codington
about what the balance ascertained at Nutt's house
represented, but taking the entire testimony to-
gether, without setting out any more of it here,
we are unable to say that it is of such a charac-
ter and weight as to overcome the conclusion of the
chancellor adverse to the complainant below.  This
conclusion is summed up in the following language of
the decree appealed from, *viz :* ''The court is of the
opinion that, aside from every other question, it is in-
cumbent upon the plaintiff, before he can ask a decree
against Anna V. Codington, to prove specifically the
items of his account and the value of the work and
materials—there being no contract with her—and this
he has failed to do.''  There is nothing in the evidence
to justify a conclusion that Mrs. Codington was bound
by the amount rendered on the settlement referred to

by Nutt, and, so far as she was concerned, it was necessary to prove, as decreed by the court, the items of the demand, and the value of the improvements actually placed upon her house.

Not feeling authorized to disturb the conclusion reached on the evidence, our decision is, that the decree appealed from must be affirmed on the evidence, and it is so ordered.