TALLAHASSEE VARIETY WORKS, a Corporation organized and existing under the laws of the State of Florida, *Appellant*, vs. B. W. BROWN in his own right and in the right of his wife, ALLIE YAWN BROWN, and ALLIE YAWN BROWN, *Appellees.*

138 So. 759.

144 So. 848.

En Banc.

Opinion filed January 8, 1932.

Opinion on Rehearing filed August 23, 1932.

Opinion on Second Rehearing filed November 4, 1932.

Reversed.

*W. J. Oven* and *James Messer, Jr.,* for Appellant;

*William Blount Myers,* for Appellees.

PER CURIAM.—This appeal is from a final decree dismissing a bill of complaint purposed to enforce a claim for materials furnished and used in the construction of a building on the separate real property of a married woman with her knowledge and assent.

The record reveals that the appellee, Mrs. Allie Yawn Brown owned Lot six (6) of Block B Highland Park Subdivision of Tallahassee, Leon County, Florida, and that with her knowledge and consent, her husband, appellee B. W. Brown entered into a contract with R. H. Hancock to construct a bungalow on said lot at a named consideration.

The bungalow was constructed in compliance with the terms of the contract to which construction appellant furnished material to the amount of $940.23, that $246.90 of said amount was paid by B. W. Brown leaving a balance due appellant of $693.33 no part of which has been paid. It is not denied that these materials went into the construction of the bungalow. It is also shown that when the bungalow was completed, it was worth more than the con-

tract price and that appellees have entered into a contract to sell it at a very substantial profit.

The Chancellor treated the bill as one to foreclose a statutory lien and dismissed it on the theory that there was no showing of privity between complainant and defendants, that the building was constructed by an independent contractor for an agreed consideration, that the complainant at no time served such a cautionary notice on the defendants as would bind them or either of them and that priority as to complainant's claim was not established.

We think this holding was erroneous. The clear import of the bill was to subject the separate real property of Mrs. Brown, under Section two, Article eleven of the constitution, to the payment of appellant's claim because it represented the price of material purchased by Mr. Brown from appellant and used with Mrs. Brown's knowledge and consent in the construction of a building on her separate property as described herein.

It is shown that appellant recorded its notice of lien as required by law but this was not material as statutory or mechanic's and materialman's liens as provided by Sections 3498 and 3499 Revised General Statutes of 1920 (Sections 5352 and 5353 Compiled General Laws of 1927) have no application to the liability of the separate property of a married woman under section two, Article eleven of the constitution, both being distinct and independent remedies. The constitutional provision does not create a lien but merely authorizes courts of equity to charge the property of the married woman with the payment of such demands and until proceedings are brought to do this, the owner may sell and dispose of her property as the law provides. Smith vs. Gauby, 43 Fla. 142, 30 So. 683; Agin vs. Gainesville Planing and Coffin Co., 80 Fla. 679, 87 So. 63.

Section two of Article eleven of the Constitution is as follows:

"A married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestrated for the purchase money thereof; or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent."

For the reasons as thus announced, the judgment below is reversed and the cause remanded.

Reversed.

WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS, J., dissent.

---

ON REHEARING.

ELLIS, J.—Tallahassee Variety Works, a Florida Corporation, in February, 1929, exhibited its bill in chancery in the Circuit Court for Leon County against B. W. Brown in his own right and in the right of his wife Allie Yawn Brown and against the latter to declare a materialman's lien upon lot numbered six (6) of Block B of Highland Park Subdivision in the City of Tallahassee. An amended bill was filed in March, 1929.

The amended bill alleged that in June, 1928, Allie Yawn Brown owned the lot in fee simple as her separate statutory property; that B. W. Brown acting as agent for his wife entered into a contract with R. H. Hancock with her knowledge and consent for the construction of a "bungalow" upon the described lot—a copy of the contract is attached to the bill and by apt words made a part of it—that the building was erected; that during the construction of the building the contractor purchased from

the complainant certain building material—a copy of the bill for such materials is attached to the amended bill of complaint and by apt words made a part of it—that complainant began furnishing the materials on June 21, 1928, and concluded on the 19th day of September of the same year.

That bill was made out against B. W. Brown by R. H. Hancock for house on corner of Beard Avenue and Cherry Street, Highland Park Subdivision, which is the same property described in the bill of complaint. The items consist of materials such as brick, lime, plaster, paint and paint brush, lattice material, moulding, chair rail, stops and other items of small value. It also contains two other items as follows: "millwork according to plans and specifications $487.00" and "Extra material from mill $82.50" furnished August 10th. Credits appear upon that bill under dates of July 7 and 28 aggregating $228.98 by checks by B. W. Brown. The balance claimed to be due is $600.38, or thirty dollars and eighty-eight cents more than the aggregate of the two items above mentioned for "millwork" and "extra material" supplied on August 10th.

The bill also alleges that B. J. Temple was employed by the contractor with the knowledge and consent of Brown and his wife to paint the building; that Temple procured from the complainant with the knowledge and consent of the defendants certain paint material, the first item of which was furnished on September 18th and the last item on November 8, 1928. A copy of that bill for painting materials is attached to the bill of complaint and made a part of it. That exhibit shows that the bill for materials was made out to B. J. Temple for B. W. Brown, for Brown House on the same lot and shows the amount to be $92.95 and consists entirely of paint materials. The claim made is that a balance of $692.33 on both bills for material and "millwork" is due and unpaid.

There is no explanation of what "millwork" consists, whether of materials or labor or both. The bill alleges that complainant presented to B. W. Brown on September 12th, presumably in 1928, a "bill for material then due" and Brown said he would wait until the house was completed and would then pay off all bills at once. On October 2, 1928, complainant wrote Brown enclosing a copy of the statement made out to Temple for paint and stated that the amount was $62.90 and the amount was "posted to October 1st." The copy of the statement furnished to Brown did not include items furnished from October 8th to November 8th inclusive amounting to $30.05 and consisting of four items.

The bill also alleges that after the completion of the building and at all times during its construction Mrs. Brown and Mr. Brown, as her agent, had knowledge that complainant was furnishing "said material" for the construction and painting of the house and after the construction of the building Brown, as agent of his wife, was furnished with a full itemized bill of "said building material, paints and paint supplies." That reference was to exhibits "B" and "C" to which reference is above made.

A copy of the contract between Brown and his contractor Hancock was attached to the bill of complaint and by appropriate words made a part of it. That contract provided that the contractor would provide all materials and labor for the construction of the building; that the work was to be done under the direction of the owner and provision was made for settling disputes by arbitration. No alterations were to be made except upon the written order of the owner. The owner could condemn materials and cause them to be removed. If the contractor refused or neglected to supply materials, necessary or skillful workmen, the owner after three days' written notice to his contractor should have the power to supply the ma-

terials and workmen and prosecute the work to completion and deduct the cost thereof from any sum then due under the contract. The contractor was to complete the work in ninety days.

The amount agreed to be paid to the contractor for the construction of the house was three thousand dollars. The contractor was required to furnish to the owner weekly his "payrolls for such work" and bi-weekly "bills for material purchased" which the owner agreed to pay. On completion of the work the owner should pay to the contractor the difference between the "total of the payrolls and materials and bills paid by him" and the sum of three thousand dollars in final settlement of the work and all extras as may have been agreed upon between the owner and contractor."

That clause clearly contemplated that the owner should pay to the contractor the amount of such bills for material and labor as the construction of the house progressed. The contractor agreed to save the owner harmless from all liens for labor and materials and the owner should during the progress of the work procure insurance upon the building in construction against loss from fire. There was no provision in the contract for a bond to be given by the contractor for the faithful completion of the work. The bill however alleges that on November 16, 1928, "Brown called together the bondsmen of said contractor and exhibited all bills for work and material, including that of your orator."

The bill alleges that after the completion of the building demand was made upon Brown as agent for his wife for the payment of the amount claimed to be due by the complainant, the amount being $693.33, but payment was declined on the ground that the contractor had exceeded the contract cost of the building. It is also alleged that the complainant did not have knowledge while materials

were being furnished by it of the limit placed upon the cost of the building's construction and further alleged that the defendants required the contractor to "make certain changes in construction and material that materially increased the cost of said building over the price for which the contract was originally made" and that the "reasonable value of said building as constructed is $4500.00 and said property is *no* under contract for·sale at $6500.00 to one F. C. Schlemmer."

The allegations immediately preceding, which are contained in paragraph five of the bill, particularly that part under quotation marks relating to changes made and the value of the building and *"no"* contract for sale, appear to have no relevancy to the case, because it is not clearly alleged that the so-called changes were made with the knowledge or consent of Mrs. Brown further than to allege that they were required by defendants and the court is no more authorized to append to the word *"no"* underscored the letter "w" than it is to append the letter "t," or to place the word after the word "under" immediately following. The clerk certified that the transcript is a correct transcript of the record.

There may be however the inference drawn from such allegations that since the changes made in the building as originally planned cost fifteen hundred dollars and complainant's claim is for only $693.33 non constat but that complainant's materials were supplied for such alterations, which were not requested in writing and that Mrs. Brown was not party to the purchase of such materials from complainant.

The bill alleges that complainant caused to be filed its notice of "materialman's lien" and the same was duly recorded on November 17, 1928; that the defendants, after the filing of the notice of lien "paid off and discharged" both the contractor and person employed as painter ig-

noring complainant's notice of lien and its bills for materials. The bill alleges also that Brown did require of the contractor a bond in the sum of three thousand dollars for the faithful performance of the contract, but that the bond does not in any way protect or indemnify laborers who worked upon the building or materialmen furnishing supplies, but that the bond was in force at the time defendants paid the contractor.

The bill prayed for the declaration of a lien upon the property and for enforcement of the same.

A copy of the notice of lien is attached to the bill as Exhibit "E" and by appropriate words made a part of it. The notice asserts a lien upon the land owned by Mrs. Brown for "materials furnished by said Tallahassee Variety Works, Inc., to said married woman to construct a dwelling house on said lands."

The foregoing lengthy analysis of the bill of complaint is given in view of the earnest controversy between solicitors for both parties as to the theory of the bill upon which the complainant seeks relief against the defendants, the views expressed by a majority of the members of the Court in the first opinion filed January 8, 1932, 106 Fla. 599, 138 South. Rep. 759, and those expressed by appellees' counsel in the petition for a rehearing which was granted.

The bill of complaint in this case definitely asserts the existence of a lien in favor of the complainant, for the materials supplied, upon the lot described and the house erected upon it which is the separate statutory property of a married woman.

It is claimed that the lien exists notwithstanding the house was erected under a contract with a builder, a third person whose duty under it required him to furnish all labor and materials because, first, the married woman, Mrs. Brown, had empowered her husband as her agent to

make the contract for the erection of the building, therefore knowledge by her existed and her assent was obtained as to such construction; second, that she, through her husband and agent, had actual notice that the complainant was furnishing materials for the construction of the house and through the written notice filed by the complainant in the office of the Clerk of the Circuit Court; third, that she had such notice actually and through her husband as her agent acting for her, and by the filing of the written notice or claim before the last payments were made to the contractor, but the bill does not allege that at the time the complainant filed written notice of its claim in the clerk's office the unpaid balance due the contractor by Mrs. Brown was sufficiently large to pay the complainant's claim. The allegation is merely: "That after the recordation of said notice of lien and after your orator had filed its bill with them the said defendants paid off and discharged both their said contractor and the person employed by him who applied said paint to said building" thus "ignoring the notice of said lien and ignoring the bills which had been from time to time rendered as aforesaid and ignoring your orator's letter of October 2, 1928, to said defendant B. W. Brown." The amount paid to the contractor and painter is not stated. From any allegation to the contrary it may have been an infinitesimal sum comparatively, if indeed any money at all. The prayer of the bill is definitely that the Court will declare a lien to exist upon the property and that it be sold to satisfy the complainant's claim in default of payment.

It is alleged that the contractor purchased from the complainant the supplies listed in Exhibit "B" and that Temple was employed by the contractor to paint the house and that Temple procured the paint supplies from the complainant listed in Exhibit "C." The fact that Brown

knew that his contractor or subcontractor was purchasing the materials and afterwards agreed to pay for them and did pay for some of them did not create in favor of the complainant a lien upon the land and building erected upon it for the supplies furnished nor did such a lien exist in complainant's favor until the statutory cautionary notice was served upon the owner or her agent by the complainant and then only to the amount unpaid on the contract at the time of the notice. Section 5381 C. G. L. 1927.

That is true because of lack of privity of contract between the owner and the materialman. If there was privity of contract between the owner and materialman the latter would have a lien for the amount of materials furnished to the owner. See Sec. 6380 C. G. L. 1927.

Such privity of contract does not exist in the first instance and unless some other relation between the parties owner and materialman is established which creates a privity of contract between them independently of the contractor and owner, the materialman must of necessity depend upon his cautionary notice for his lien and upon the amount then due the contractor by the owner for the extent or amount of it. If that were not true the promise of the owner to pay the materialman for materials which the latter had sold to the contractor would be merely a promise to pay the debt or obligation of another and even though it should be in writing, which is not alleged, it should be supported by some consideration.

Mere knowledge on the part of Brown that complainant or any other materialman was furnishing materials to the contractor creates no privity between Brown and such materialman. "Privity" between Brown and his wife on the one hand with the complainant on the other is privity of contract, necessarily so because a lien cannot exist without a debt and a debt cannot exist without a contract ex-

press or implied. Mrs. Brown's privity of contract with the complainant must be established through her husband as her agent. If Brown was the owner of the property it could not be maintained that a lien existed upon the property because of privity between him and the complainant because for the reason given nothing in the nature of contract existed between him and the complainant, but even if it can be said by the most liberal construction of the bill's allegations that there existed between Brown and the complainant an implied agreement to pay the complainant for all material purchased from it by the contractor that privity could not be extended to Mrs. Brown as her authority to Brown extended only to the making of the contract with Hancock, the contractor.

There is no showing in the bill that she authorized her husband to do more than that. It is not sufficient that she personally knew and acquiesced in the contractor's purchase of the material from complainant.

In the case of Waring v. Bass, 76 Fla. 583, 80 South. Rep. 514, Donegan, who was the owner of the property, gave Waring full authority to enter into the contract with Bass for the construction of the building and Donegan acquiesced in and consented to the work being done.

If this case had been one by Hancock against Mr. and Mrs. Brown to enforce a lien in favor of Hancock a different situation would be presented.

There is no definition of the word "privity" that can be applied in all cases. 50 C. J. 403. Under the provisions of Section 5380 C. G. L., *supra*, the complainant could acquire its lien upon the property upon one of two theories, first, that in furnishing the materials it was in privity with the owner or through the medium of a cautionary notice under the provisions of Section 5381 C. G. L. 1927. The bill evidently relies upon the latter theory, but makes two efforts at the desired result by attempting

to establish privity between it and Mrs. Brown through her husband by alleging that the materials were furnished with their knowledge and consent.

A materialman's lien is not created by contract. It is created by statute, nevertheless a contract with the owner or his duly autho'rized agent for the furnishing of the material is essential as a basis or foundation for the lien. See 40 C. J. 42 sec. 3 and note.

It cannot be successfully contended that because the owner of a lot knows that his contractor, with whom he had a contract for the furnishing of all materials and labor in the construction of a house and an agreed price for the structure, is purchasing material from a certain materialman and raises no protest or even makes payments at times to the materialman at the contractor's request that any semblance of contract or privity is by such means established between the owner and materialman. If the materialman seeks to establish or acquire a lien he must proceed as the statute directs.

The allegations of the bill fail to' establish the existence of a statutory lien against Mrs. Brown's property.

There is no effect whatsoever to subject the property under the provisions of Section 2 of Article XI of the Constitution fo'r materials used with Mrs. Brown's knowledge or assent in the construction of the building or improvements upon her property. Indeed the allegations of the bill most liberally construed make no such case. It cannot be said in view of such allegations that she individually or through her husband caused the complainant to' furnish the materials or that she purchased through the consent and co-operation of her husband such materials from the complainant. See Thrasher vs. Doig, 18 Fla. 809; Schnabel v. Betts, 23 Fla. 178, 1 South. Rep. 692; O'Neil v. Percival, 25 Fla. 118, 5 South. Rep. 809; Garvin v. Watkins, 29 Fla. 151, 10 South. Rep. 818; Nutt v. Cod-

ington, 34 Fla. 77, 15 South. Rep. 667; Macfarlane v. Southern Lumber & Supply Co., 47 Fla. 271, 36 South. Rep. 1029; Agin v. Gainesville Planing & Coffin Co., 80 Fla. 679, 87 South. Rep. 63.

In the Agin case, *supra*, this Court, speaking through the writer, said that the purpose of Section 2, Art. XI in *so far as it relates to the matter of the bill in this case* "is to remove from married women under carefully limited restrictions the common law disability of coverture in the case specified, and in such cases to *enable her* to *assume obligations* that can be charged in equity upon and enforced out of her separate property (citing authorities). (Italics mine). One of the restrictions upon the assumption of such obligations by married women is knowledge on her part that the material is being furnished and that she has assented to it upon the conditions upon which it is being supplied. This much of the elements of a contract is essential to her assent, which must be directly or indirectly given."

It was also said in that case: "She may even have knowledge that her contractor is purchasing material from a certain materialman and employing certain persons as laborers, but as between her and such persons there is no privity, and she is not by any statute required to assume the obligation incurred by her contractor."

The case of Craft v. American Agr. Chemical Co., 81 Fla. 55, 87 South. Rep. 41, is not analogous because in that case the husband as agent of Mrs. Craft dealt directly with the complainant who sought to subject Mrs. Craft's separate property to the payment of the fertilizer bill. See Ferris-Lee Lumber Co. v. Fulghum, 98 Fla. 171, 123 South. Rep. 697.

We have read with much interest the able briefs of solicitors for appellant but the case made by the bill of complaint in the case upon which the complainant is en-

titled to relief, if at all. It matters not what the answer or evidence may be, the complainant may obtain relief only upon the case made by his bill. The amended bill of complaint presents no ground for the relief sought.

Scholastic discussion about whether the statute, Sec. 4551 C. G. L. *supra,* creates a lien upon married women's separate statutory property or the applicability of Sections 5380, 5381 C. G. L., *supra,* relating to the acquisition of such liens by persons in privity with the owner or not in privity with the owner, or whether Section 2 of Article XI of the Constitution creates in an appropriate case an inchoate equitable lien are most interesting and edifying but upon a more careful analysis of the bill of complaint in this case we are of the opinion that the foregoing decision of this case, Tallahassee Variety Works v. Brown, 138 South. Rep. 759, should be reversed and the decision of the chancellor from which an appeal was taken should be affirmed.

It is so ordered.

BUFORD, C.J., AND BROWN, J., concur.

WHITFIELD, P.J., AND DAVIS, J., concur specially.

TERRELL, J., dissents.

WHITFIELD, J. (Concurring specially).—The bill of complaint herein proceeds upon the theory that, in providing for carrying into effect the provisions of section 2, Article XI of the Constitution, section 4551 (2854) C. G. L., gives a statutory lien to materialmen who furnish materials used in the construction of a building upon the separate property of a married woman in this State with her knowledge or assent, upon the due filing and record of a notice of the furnishing of such materials.

Section 2, Article XI, Constitution, does not create a lien upon the separate property of a married woman to secure the classes of demands against such property that are specified by the organic section, but it merely auth-

orizes courts of equity to charge the property with the payment of such enumerated classes of demands. Smith v. Gauby, 43 Fla. 142, 30 So. 683. The organic section contemplates a relation of privity between a married woman and those who may charge in equity her separate property for the several specified classes of demands that may be made against her separate property. See Lowry v. Downing Mfg. Co., 80 Fla. 745, 87 So. 65; Macfarlane v. So. L. & S. Co., 47 Fla. 271, 36 So. 1029.

Sections 5349 (3495) et seq., C. G. L. relating to liens for laborers and materialmen and to enforcement of such liens, are not applicable to the separate property of married women in this State. See O'Neil v. Percival et ux., 20 Fla. 937; Smith v. Gauby, 43 Fla. 142, 30 So. 683; Agin v. Gainesville P. & C. Co., 80 Fla. 679, 87 So. 63.

Section 2, Article XI, of the constitution provides that the separate property of a married woman may be charged in equity "for labor and material used with her *knowledge or assent* in the construction of buildings or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, with her *knowledge and consent.*" The words "knowledge or assent" and "knowledge and consent" as used have reference to a relation of privity between the married woman and the person seeking to charge her separate property.

Where it is sought to charge in equity a married woman's separate property for obligations alleged to have been assumed for her by an agent, the authority to the agent to act for the married woman in the particular matter, should be duly shown, so that privity between the married woman and the complainant in the suit may appear.

If labor or material is furnished by a third party to a contractor who used it on the married woman's separate property, pursuant to the contractor's relation of privity

with the married woman, her separate property cannot be charged by the third person for such labor or material, unless a relation of privity in furnishing the labor or material is shown between the married woman and such third person. See The Thomas Co. v. Daugherty, 68 Fla. 305, 67 So. 105; Agin v. Gainesville P. & C. Co., 80 Fla. 679, 87 So. 63.

Under section 3, Article XI, the Legislature may enact laws to carry into effect the provisions of sections 1 and 2 of the Article; and Chapter 6926, Acts of 1915, as amended by Chapter 9301, Acts of 1923, now section 4551 (2845) C. G. L., is designed to effectuate a part of section 2 of Article XI.

While the language used in the amended statute, Chapter 9301, Acts of 1923, section 4551 (2845) C. G. L., is somewhat ambiguous, the intent of the statute is to prescribe a remedial procedure that is applicable to that portion of section 2, Article XI, of the constitution, which provides that a married woman's separate property may be charged in equity * * "for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements, upon her property." The statute gives a right in the nature of a lien upon a married woman's separate property, before decree may be obtained by charging in equity the property under the constitution, upon the due filing and recording of a prescribed notice of the performance of labor or of the furnishing of materials to be used in improvements upon the separate property of any married woman in this State, with her knowledge or assent, such lien or claim when duly perfected being prior to the claims of other persons who thereafter so furnish labor or material, etc.

The bill of complaint does not clearly allege the authority of Mrs. Brown's husband to represent her in assenting to the furnishing of materials to the contractor by

the complainant so as to obligate Mrs. Brown in order to charge her separate property for such materials. Mr. Brown's authority to represent his wife does not clearly appear by the bill of complaint to extend beyond the construction of the building within the terms of the contract, to which contract the complainant was not a party. In other words, the bill of complaint does not clearly allege facts showing the necessary privity between Mrs. Brown and the complainant with reference to the demand made. See Macfarlane v. So. L. & S. Co., 47 Fla. 271, 36 So. 1029; H. L. & M. Co. vs. Teate, 98 Fla. 1055, 125 So. 21. Section 5381 (3518) C. G. L. is not applicable to proceedings under Sec. 2 Art. XI, Constitution, or under section 4551 (2854) C. G. L.

In view of the whole record upon which the bill was dismissed, on final hearing, such dismissal should be without prejudice; or leave should be given to amend the bill of complaint upon proper terms.

DAVIS, J., concurs.

---

ON PETITION FOR SECOND REHEARING.

PER CURIAM.—Upon petition of appellant for a second rehearing after reversal of the judgment (Tallahassee Variety Works vs. Brown, 138 Sou. Rep. 759) and its affirmance here on August 25, 1932, after rehearing was granted and reargument had, it appears that the court upon consideration thereof ought to modify its judgment of affirmance entered August 25, 1932, so that the same shall be as follows: That the decree appealed from be modified to a dismissal of the bill of complaint without prejudice or that leave be given to amend the bill of complaint upon proper terms, and that as so modified, the decree appealed from shall stand affirmed, and the previous judg-

ment of this court in reversing such decree will stand vacated and set aside upon rehearing.

It is so ordered and mandate will issue in accordance with this judgment. The appellant's petition for a further rehearing will be denied.

WHITFIELD, ELLIS, BROWN AND DAVIS, J.J., concur.

BUFORD, C.J., dissents.

TERRELL, J., not participating.