FIRST NATIONAL BANK OF TAMPA, FLORIDA, a national banking corporation, et al., *Appellants*, vs. SOUTHERN LUMBER & SUPPLY COMPANY, a corporation, *Appellee*.

145 So. 594.

Opinion filed September 28, 1932.

Petition for rehearing denied November 7, 1932.

*Mabry, Reaves & White,* for Appellants;

*Macfarlane, Pettingill, Macfarlane & Fowler,* for Appellee.

DAVIS, J.—This was a suit in equity filed by Southern Lumber & Supply Company to enforce a materialman's lien against certain property described in the bill. The

materialman's interest was asserted as being superior to the interest in a mortgage on the premises held by First National Bank of Tampa, as assignee. The Chancellor entered a decree for the materialman, and the bank appealed. The question to be decided is whether or not the materialman ever acquired a statutory lien on the property involved, and if so, whether or not such lien was superior to the lien of the bank as assignee of the mortgage hereinabove referred to.

Briefly stated, the facts are as follows: The Bank was the assignee of a mortgage executed by one Mortimer H. Halle to A. E. J. Anderson, Inc. A. E. J. Anderson, Inc., had obtained a loan from the First National Bank of Tampa for the sum of $4400.00 and the mortgage from Halle had been assigned to it as collateral security for that loan. A. E. J. Anderson and D. W. Blackmon were a firm of contractors, trading under the name of Anderson Investment Company. The corporation designated as A. E. J. Anderson, Inc., was a separate entity of which A. E. J. Anderson was alleged to have been the major stockholder and controlling spirit.

On or before December 1, 1927, Halle as owner of a lot of land, made a contract with Anderson Investment Company for the erection of a house on the lot. Materials for the building were furnished by the Southern Lumber & Supply Company. After the work by the contracting firm had begun, it developed that the owner, Halle, could not make the contract payments, whereupon the firm requested and was given a mortgage for the sum of $5500.00 which was the contract price of the building. This mortgage, however, was made to A. E. J. Anderson, Incorporated, and not to Anderson Investment Company, the contractors. It was dated December 10, 1927, and recorded December 19, 1927.

On December 20, 1927, the First National Bank of

Tampa made a loan of $4400.00 to the A. E. J. Anderson, Inc., corporation, the note and mortgage from Halle to that corporation being assigned to' the bank to be held as collateral. The mortgage was represented by Anderson as being a first mortgage and the bank accepted it on the basis of such representation.

In the meantime Anderson acting for the contracting firm had approached the material concern (Southern Lumber & Supply Company) and made arrangements with that company to supply the materials necessary for building the building contracted for. On this occasion Anderson explained that he would not be able to pay the materialman periodically according to his custom, because the owner would not get his money out of the job until it was completed, at which time he was going to put a mortgage on it to secure funds with which to pay the building price under the contract. Materials were supplied and the building completed. The amount of the indebtedness for materials was later represented by notes accepted by the materialman, not as payment, but to evidence the amounts due.

To establish the materialman's lien sought to be foreclosed, the complainant relied upon allegation and proof of privity with the owner under Section 5381 C. G. L., 3518 R. G. S. Privity was denied, and it is around that denial that the principal controverted question of fact turns.

It is well settled that one in order to be entitled to a materialman's lien under Section 5381 C. G. L., 3518 R. G. S., must show either privity with the owner, or notice to the owner that he will furnish, is furnishing, or has furnished materials to the contractor to be used in the construction of his building, giving the essential details required in such notices by the statute. Harper Lumber & Mfg. Co. vs. Teate, 98 Fla. 1055, 125 Sou. Rep. 21.

And as was said in the case just cited, *privity* with the owner, within the meaning of the lien statute, exists only when the creditor in furnishing the materials or performing the labor, has acted on the owner's obligation, express or implied, to pay therefor *as a primary debtor.*

The word "privity" as used in the lien statute, providing for the acquisition of liens by persons in privity with the owner, against the latter's real property, is not employed in the technical sense of the common law, but implies special knowledge showing active consent or concurrence. And as has been pointed out in a recent opinion of this Court prepared by MR. JUSTICE ELLIS in the case of Tallahassee Variety Works vs. Brown, opinion filed August 25, 1932, 106 Fla. 599, 144 So. 848, when applied to a materialman furnishing materials to a contractor to execute a special construction contract, contemplating the erection of a building for a specific price (as was the case here) privity between the owner and the materialman does not exist in the absence of privity of contract between them, because the lien cannot exist without a debt, and the debt cannot exist without a contract, express or implied. Mere knowledge on the part of the owner that a materialman is furnishing materials to the contractor to enable the contractor to execute his contract with the owner for the erection of the building, creates no privity between the owner and such materialman. Neither would a promise of the owner to pay the materialman for materials which the latter had sold to the contractor to enable him to execute his contract, be more than the promise of the owner to pay the debt or obligation of the contractor, which should be in writing and supported by some consideration to be enforceable. Tallahassee Variety Works v. Brown, supra, per ELLIS, J.

In short, the existence of the contract between the owner and the contractor, under the terms of which the

contractor agrees to build a structure and furnish the labor and materials for so doing, contemplates that the owner of the lot will have *knowledge* that his contractor with whom he has a contract for the furnishing of all materials and labor necessary for the construction of a building at an agreed price, will purchase materials from materialman, and such *knowledge* under such circumstances does not ripen into a privity of contract between the owner and the materialman, merely because the owner raises no protest or even makes payments at times to the materialman *at the contractor's request.* ''If the materialman seeks to establish or acquire a lien he must proceed as the statute directs.'' Tallahassee Variety Works v. Brown, supra.

And as MR. JUSTICE ELLIS in the foregoing case sums up the situation in a case like the present: ''There is no definition of the word 'privity' that can be applied in all cases. 50 C. J. 403. Under the provisions of Section 5380 C. G. L. *supra,* the complainant could acquire its lien upon the property upon one of two theories, first that in furnishing the materials it was in privity with the owner, or through the medium of a cautionary notice under the provisions of section 5381 C. G. L. 1927.'' In the case at bar, privity with the owner is relied on, and it was incumbent upon the complainant materialman in the court below to both plead and establish that fact, inasmuch as he relied upon it solely for support of his claim of lien.*

In this case, taking it for granted that the allegations of the bill attempting to show a lien enforceable against the property for materials furnished the contractor

---

*A materialman's lien is not created by contract. It is created by statute, nevertheless a contract with the owner or his duly authorized agent for the furnishing of the material is essential as a basis or foundation for the lien. See 40 C. J. 42, sec. 3 and note. Per ELLIS, J., in Tallahassee Variety Works v. Brown, supra.

under the contract, are sufficient as against demurrer questioning their sufficiency, the proof wholly fails to substantiate the claim of ''privity'' with the owner relied on. This is borne out by the fact that complainant's own evidence discloses that the contractors required the owner to give them (the contractors) a mortgage for the entire amount of the contract price of the house, and explained to such owner in demanding the mortgage, that the mortgage was for the protection of the *contractors* on account of their furnishing the material that went into the house. Or in other words, the effect of the evidence is to show that the contractors purchased the materials from the materialman on their own credit and responsibility, so as to be able to use such materials in complying with their contractual obligation to furnish all labor and materials to make the house a completed building. There is no substantial proof that at any time the materialman entered into any actual contractual *arrangement* with the owner, under which a ''privity'' of contract to pay for the materials could be implied on the owner's part. On the contrary the owner dealt principally with the contractors, and gave them a mortgage to secure payment of the price of the completed structure. The fact that the contractors took this mortgage to the bank and negotiated it as collateral security to obtain funds which should have been used to pay for the materials the contractors purchased, but which was not so used, is not a loss for which the owner may be in anywise be charged. The materialman had the option of giving to the owner the cautionary notice provided for by law, and did not do so. Therefore since there was no ''privity'' shown with the owner, the materialman's claim to a lien cannot be upheld. *Privity* such as is required under the lien statute cannot arise out of the owner's mere requirement *per se* that the contractor

pay for materials, before the owner will pay him his price, whether the owner has the right to make such condition and enforce it under the contract or not.

In order to create *privity* under the lien statute, there must be in addition to knowledge of the owner that a certain person is furnishing labor or material for the contractor to be used in the execution of his contract, an express or implied assumption by the owner of a contractual obligation to pay for the labor or materials furnished.* See Harper Lumber & Mfg. Co. vs. Teate, supra. While such privity may be made out by circumstantial, as well as direct and positive evidence, the ultimate conclusion must be made to appear that the owner voluntarily put himself in such situation toward the materialman or laborer as to make him liable on an implied agreement to pay for the labor or material furnished, not as a secondary, but as a primary debtor on the account.

The relation of direct contractual privity between the contractor and the owner, cannot supply the absence of privity between the owner and the materialman in furnishing the labor and material required under the contractor's contract, when the material is furnished to enable the contractor to perform his contract with the owner, even in cases where the owner insists upon personally seeing to it that the materialman and laborers

---

*". . . unless some relation between the parties owner and materialman is established which creates a privity of contract between them independently of the contractor and owner, the materialman must of necessity depend upon his cautionary notice for his lien and upon the amount then due the contractor by the owner for the extent or amount of it . . . It cannot be successfully contended that because the owner of a lot knows that his contractor, with whom he has a contract for the furnishing of all materials and labor in the construction of a house and an agreed price for the structure, is purchasing material from a certain materialman and raises no protest or even makes payments at times to the materialman at the contractor's request, that any semblance of contract or privity is by such means established between the owner and materialman." Per ELLIS, J., in Tallahassee Variety Works v. Brown, decided at June Term, 1932, 106 Fla. 599, 144 So. 848.

are paid by the contractor, before the contractor gets his agreed compensation. The assumption of a legal, not a moral, relationship on the owner's part toward the materialmen or laborers is necessary to support the owner's liability based on "privity" with such laborers or materialmen. Tallahassee Variety Works v. Brown, supra.

The allegations of the bill to the effect that the note and mortgage assigned later to the bank, were originally given as security for the payment of the parties furnishing the labor and materials necessary to the construction of the building, as well as the contract price to the contractors, were pointedly denied by the answer of the contracting firm, as well as put in issue by the answer of the First National Bank.

While a resulting trust in a mortgage may be established by parol, as appellee contends (Bay Biscayne Co. vs. Baile, 73 Fla. 1120, 75 Sou. Rep. 860) parol testimony to establish such trust must be clear and convincing to the effect that such trust exists. Williams vs. McAdow, 103 Fla. 644, 137 Sou. Rep. 891.

In this case, giving due consideration and weight to the findings of the Chancellor upon the evidence, the record fails to show that the alleged constructive trust in the bank's mortgage claimed by the materialman, was proved by the character and weight of testimony required to make out such a trust as against the denials of the parties concerned.

The mortgage given by the owner of the property to the contractors for the contract price of the building, but taken in the name of the corporation as mortgagee instead of the firm, appears to have been assigned to the First National Bank before maturity and without knowledge of any equities affecting its status as being other than what it was represented to be, namely, a first

mortgage. Therefore as against the bank, the findings and decree of the Chancellor are erroneous, and being complained of here, must be reversed and the cause remanded for further proceedings in accordance with this opinion, with leave to re-open the cause for the taking of further testimony if the Chancellor in his discretion shall so allow and the parties so desire.

Reversed and remanded.

BUFORD, C.J., AND WHITFIELD, ELLIS AND BROWN, J.J., concur.

TERRELL, J., not participating.