155 So.2d 627 (1963)
John P. MILLER and Maude B. Miller, his wife, Appellants,
v.
Paul W. DUKE and James E. Duke, co-partners, d/b/a Duke Lumber & Supply Company, a co-partnership, Appellees.
No. E-3.
District Court of Appeal of Florida. First District.
July 16, 1963.
Rehearing Denied August 29, 1963.
*628 Scruggs & Carmichael, Gainesville, for appellants.
Lowry & Andrews, Gainesville, for appellees.
RAWLS, Judge.
A construction of the Mechanics' Lien Law is involved in this appeal.[1] The appellants-owners John P. Miller and wife, Maude B. Miller, have appealed a summary final decree rendered in favor of plaintiff-materialman, Duke Lumber and Supply Company, which had filed this action to enforce its mechanic's lien.
The facts are not too complicated and are not in dispute. John P. Miller and Maude B. Miller, joined by Blennie Beach (the mother of Mrs. Miller), owners, entered into a written contract with Marion Manufacturing Company to construct a home on rural property in Alachua County owned by the Millers.
The full and complete consideration flowing to the contractor for the construction of the home was to be the conveyance by Mrs. Beach of a parcel of real estate in the City of Gainesville. Under the terms of the contract this conveyance would be executed upon completion and acceptance of the newly constructed home. There was no provision for partial payment of any type and no performance bond was specified.
Materials in the value of $1,896.30 were furnished by Duke to the contractor and incorporated in the improvement. The contractor partially completed the project and then abandoned same. The owners have made no payment for the portion of work done or materials furnished. Although Duke did not give a cautionary notice as provided in Section 84.04, Florida Statutes, F.S.A., he timely filed his claim of lien against the property partially improved. No privity existed between Duke, the materialman, and Millers, the property owners. It is established without contradiction that no payment was to be made to the contractor until full compliance by him with the terms of the contract, and that Mrs. Beach stood ready and willing to convey the consideration set out in the contract upon completion of the project by the contractor or the plaintiffs or any other person lawfully entitled to perform the contract.
By stipulation the parties agree that: 1. The consideration which the contractor was to receive is of a value in excess of $2,000, 2. The fair market value of improvements actually made by the contractor in partial performance of the contract is in excess of $2,000, and 3. Labor and/or materials in the sum of $1,800 will be required to complete the project. Upon consideration of the materialman's complaint, the answer of the owners, the affidavit of the materialman to the effect that he had not been paid, and the aforesaid stipulation, the chancellor entered a summary final decree in favor of Duke finding that it had furnished to the contractor materials in the value of $1,896.30 which were incorporated in the improvement of the land owned by the Millers, and that Duke was entitled to recover the entire sum together with interest from the date the last item of said materials was delivered, and decreed that upon failure of the owners to pay said sum together with the cost within thirty days, the improved property be foreclosed by reason of said lien.
The material questions of law to be decided are substantially as follows:
1. Whether the Mechanics' Lien Law applies to a contract in which the consideration flowing from the owner to the contractor for the work done and material furnished consists of real property to be conveyed *629 rather than currency or its equivalent.
2. Whether a materialman not in privity with the owner is entitled to the lien, and if so, the extent thereof, in those instances where the contract provides for payment to the contractor only upon completion of the job and the contractor without just cause abandons the job before it is substantially completed.
The Mechanics' Lien Law is of statutory origin and any given state of facts must be applied according to the general terms and intentions of the entire act.[2]
In referring to the consideration involved in contracts covered by the Mechanics' Lien Law the terms "money", "sums of money", and "per cent of payment" are employed. These designations do not bear or admit the connotation that contracts covered by the act may not be based on forms of consideration other than money. There is no merit in appellants' contention that the Mechanics' Lien Law does not apply to the contract in suit, which contention is predicated on the fact that the consideration flowing from appellant-owners to the contractor consisted exclusively of the promise of the former to convey to the latter certain urban real property. Equity looks to the substance rather than the form and the maxim "id certum est quod certum reddi potest" is applicable to enable the trial court to determine, as an incident to settling the issues in this suit, the value of the real property, title to which was to pass to the prime contractor upon completion of the contract as consideration for the performance of his obligations thereunder. In final analysis the "contract price" here involved is the value of the property so to be conveyed as of the date the contract was entered into.
The second question poses a more complicated problem. It calls for a determination of respective rights of the appellee-materialman and the appellant-owners under the facts peculiar to this case, including the salient fact that the prime contractor without excuse abandoned the contract prior to substantial completion. The good faith of the appellant-owners in entering into the subject contract is not questioned; consequently, the rights of the materialman against the owners are circumscribed by the terms and conditions of the contract,[3] coupled with the provisions of Chapter 84, Florida Statutes, 1961, F.S.A.
Within thirty days after beginning to furnish materials and not later than the last day of furnishing same, the statute contemplates that a materialman by filing a cautionary notice of intention to claim the statutory lien against the property to be improved[4] may acquire a position of priority with the owner. The appellee did not file such notice.
Where the owner directly contracts with the materialman they are of course in privity with each other and the lien arises as a matter of law.[5] There was no privity of contract between the owners and appellee in the case on review. Appellee initially looked to the prime contractor for payment and when he defaulted turned to the statute for a claim of lien upon appellants' property for satisfaction of the debt incurred by the prime contractor.
In Foley Lumber Company v. Koester,[6] it is held that a materialman's lien may be created either as a direct lien between the *630 materialman and owner, or as a derivative lien arising from a contract between the materialman and the contractor, and that if there is no privity of contract with the owner, the materialman's rights are dependent upon the extent of the materialman's compliance with the provisions of the Mechanics' Lien Law. Other principles of law materially bearing upon the instant cause are found in Greenblatt v. Goldin[7] where it was held that materialmen may be secured by mechanics' liens upon land improved or affected by their material or labor, and this without reference to technical and ancient concepts of privity of contract. For like reasons they may be secured as against the owner by a lien upon any moneys due to the contractor, and secured as against the contractor by a lien upon any moneys collected from the owner.
The owner is not bereft of rights under the Mechanics' Lien Law. It specifically provides that the aggregate of all liens may not exceed the amount of the contract price less moneys properly paid.[8] We hold that one of the purposes of the Mechanics' Lien Law is to assure to the owner, in an arm's length transaction, that so long as he complies in good faith with its provisions he will be able to construct a specific improvement on his property for a given contract price.
In the instant case we find a materialman who has been "stuck" for $1,896.30 worth of materials and owners whose direct contract has been violently breached, with the result that they have a partially completed structure. Applying elemental principles of law to these facts, it is evident that under the direct contract the owner owes nothing to the prime contractor and, except for the Mechanics' Lien Law, would owe nothing to the materialman.[9]
Section 84.05(11), Florida Statutes, F.S.A., provides that in the absence of a performance bond, an owner must withhold at least 20% of each payment falling due under the direct contract. Highly material to this case is a further provision of said section requiring the owner, in the event the improvement is abandoned prior to completion, to follow a specified procedure before commencing work toward completion of the improvement. Included is a requirement that he withhold 20% of the contract price and make disbursement thereof in accordance with the specified procedure in the act. This provision is clearly for the benefit of prospective lienors, including materialmen. As the instant project was not bonded, the owners were required by law to withhold 20% of the contract price at all times during the progress of construction and to disburse the same only as provided by the act.
This being a proceeding in equity, in recognition of and applying the maxim that he who seeks equity must do equity, we have treated the transaction in suit as if the prime contractor had discontinued work as a matter of right under the terms of the contract, and as if the owners at that time were obligated to account to and pay the contractor that percentage of the total consideration (value of the land to be conveyed to prime contractor under the contract) that would have been payable to the prime contractor on the basis of quantum meruit as of the time the contract was abandoned, e.g.: Assuming the consideration (value of property to be conveyed) is determined to be $10,000, that the improvement was 60% completed at the time the *631 project was abandoned by the prime contractor, that he abandoned same as a matter of right, and that at that point neither the owners nor contractor were in violation of the statute, then the amount that the contractor would have been entitled to receive from the owners and the amount the owners would have been entitled under the statute to pay the contractor without suffering any detriment is 80% of said 60% figure, amounting to $4,800; and as to that sum the materialman would have had no recourse against the owner. Pursuing this example, and applying the rule we have adopted, the materialman would have had a valid and foreclosable lien for $1,200 upon the improved property.
The appellee-materialman in this case asserts, however, that he is entitled to the value of all materials furnished because more than that amount was owed to the contractor. This is obviously incorrect because the evidence is undisputed that the contractor defaulted and it is not developed as a matter of proof or law that appellants owe him anything. As said, we have indulged the fiction of the existence of an obligation from owners to the prime contractor only for the purpose of doing equity to the materialman in the premises. Indeed, if appellee's contention were sustainable, the owners would likewise be entitled to be made whole, and this would require that appellee assume the obligation of completing the project. Dealing as we are with two innocent people, our disposition is somewhat governed by equitable principles relating to the marshalling of assets.
The Mechanics' Lien Law has long been recognized as an outstanding example of inept legislative endeavor, perplexing alike the bench and bar, contractors, owners, materialmen and workmen. Amendments of the 1963 legislature are looked to with fervent hope for improvement. However, construing all of the provisions of the 1961 version in pari materia, the conclusion is inescapable that it was not the legislative intent to provide an inordinate benefit to any of the classes of persons affected thereby. Where the cautionary notice is not given to the owner, where no special circumstances exist, and assuming that the owner has complied with the act, the materialman's lien thereunder is limited to 20% of the amount payable to the prime contractor at any given time during the progress of the improvement.
The creation of the statutory lien foreclosable in equity contemplated that equitable principles govern both construction and enforcement of the act. We conclude that it would be inequitable to relieve the owner entirely of all liability under the circumstances of this case. Not having exacted a bond of the prime contractor, the owner in a very real sense impliedly vouched to those relying for protection on the act, to the extent of but not beyond the lien afforded thereby, that the prime contractor was a person who was willing and able to perform the contract, and would not without just cause abandon it. It follows, then, that when abandonment occurred the appellee was in equity and good conscience entitled to the statutory lien to the extent hereinabove stated and exampled.
The natural justice of this cause, involving innocent parties, is for the owners to have the prime contract completed for the consideration stated therein, and for the materialman to be paid for the materials furnished; but the decree appealed contemplates that the materialman is to be made whole and the owners left with a partially completed and perhaps worthless project.
Under the circumstances of this case it was error to award the materialman the entire value of the materials furnished to the improvement. The decree appealed is reversed and this cause is remanded with directions to reopen the proofs for the purpose of determining the value, as of the date of the primary contract, of the real property constituting the consideration accruable to the prime contractor for *632 the performance of his obligations thereunder, and for the further purpose of determining what proportion of the contract was completed at the time of its abandonment; and thereupon to award the appellee-materialman a foreclosable lien upon the subject property in an amount up to but not exceeding 20% of the value of the work done prior to abandonment; such value to be based on the ratio between the percentage of work done prior to abandonment as compared to the total value of the consideration that would have accrued to the prime contractor in the event he had completed the project.
Reversed and remanded with directions.
STURGIS, Chief Judge and CARROLL, DONALD, J., concur.
NOTES
[1] Chapter 84, Florida Statutes, 1961, F.S.A.
[2] Sheffield-Briggs Steel Products, Inc., v. Ace Concrete Serv. Co., 63 So.2d 924 (Fla. 1953).
[3] Trustees of Wylly Academy v. Sanford, 17 Fla. 162.
[4] Section 84.04, Florida Statutes, 1961, F.S.A.
[5] Weed v. Horning, 33 So.2d 648 (Fla. 1948); Tallahassee Variety Works v. Brown, 106 Fla. 599, 138 So. 759, 144 So. 848, 853 (1932); and Foley Lumber Company v. Koester, 61 So.2d 634 (Fla. 1952).
[6] Foley Lumber Company v. Koester, Ibid.
[7] Greenblatt v. Goldin, 94 So.2d 355, 357, 59 A.L.R.2d 877 (Fla. 1957).
[8] Section 84.02, Florida Statutes, F.S.A.
[9] See Pitts v. Ahlswede, 139 So.2d 159 (Fla.App.1st, 1962) and authorities cited therein, which hold that a contractor "* * * where he has not substantially performed his contract, or where he has failed to perform a material and considerable part of the work required under the contract, or where he has willfully or intentionally departed from, or failed to carry out, the terms of the contract * * *" is not entitled to a lien.