341 So.2d 206 (1976)
TOMPKINS LAND CO., INC., Appellant,
v.
Roosevelt EDGE et al., Appellees.
No. 75-2058.
District Court of Appeal of Florida, Fourth District.
December 17, 1976.
Rehearing Denied February 2, 1977.
Robert F. Higgins of van der Berg, Gay & Burke, Orlando, for appellant.
John A. Baldwin of Baldwin & Dikeou, Fern Park, for appellee, Roosevelt Edge.
ALDERMAN, Judge.
This is an appeal from a final judgment in a lien foreclosure suit pursuant to Chapter 713, Florida Statutes (1973).
Tompkins Land Co., Inc., was the owner and developer of an apartment complex. Tompkins entered into a direct contract with Ramsey Construction Co., Inc., for the installation of water and sewer lines. Ramsey in turn sub-contracted with Roosevelt Edge for the installation of certain of the water and sewer lines, including fire hydrants. Edge finished his work on November 28, 1973. He billed Ramsey directly for the money remaining due under his subcontracts. Ramsey failed to pay. On February 15, 1974, Edge served a notice to owner on Tompkins and on February 22nd filed his claim of lien.
At trial it was established that Edge had failed to timely file his notice to owner and that all construction funds under the direct contract between Tompkins and Ramsey had been disbursed. Edge then claimed that he was entitled to recover part of the money due to him directly from Tompkins, on the basis of direct privity with the owner. He contended that he had come into direct privity with Tompkins during the course of his work, and therefore was not required to file a notice to owner. Edge alleged that he came into privity with the owner when Tompkins told him that he was installing a fire hydrant in the wrong place and that the hydrant would have to be *207 relocated to the proper location. The trial court ruled that Edge had come into privity with Tompkins and consequently was not required to file a notice to owner in reference to the costs of relocating the fire hydrant. Judgment was awarded in favor of Edge against Tompkins in the amount of $1352.49, plus $800.00 for attorneys' fee.
Tompkins filed this appeal and assigned as error the trial court's finding that Tompkins and Edge came into privity during the course of construction, and the resulting judgment entered against Tompkins. Edge has filed a cross appeal alleging that the award of attorneys' fee was insufficient.
Section 713.05, Florida Statutes (1973) provides in part as follows:
"... A lienor who, as a subcontractor, laborer or materialman not in privity with the owner, commences to furnish labor, services or material to such an improvement and who thereafter becomes in privity with the owner shall have such a lien for any money that shall be owing to him for such labor, services or materials furnished after he becomes in privity with the owner; provided, such a lienor may record one claim of lien to cover his work done both in privity with the owner and not in privity with the owner..."
If Edge is able to recover directly against Tompkins, it must be under this section of the Mechanics' Lien Law. The determinative issue is whether there was sufficient evidence to support the trial court's finding that the sub-contractor, Edge, became in privity with the owner, Tompkins.
The Mechanics' Lien Law, Chapter 713, does not specifically define "privity"; however, the Supreme Court, first in First National Bank of Tampa v. Southern Lumber & Supply Co., 106 Fla. 821, 145 So. 594 (1932) and again in Foley Lumber Co. v. Koester, 61 So.2d 634 (Fla. 1952) said:
"The word `privity' as used in the lien statute, providing for the acquisition of liens by persons in privity with the owner, against the latter's real property, is not employed in the technical sense of the common law, but implies special knowledge showing active consent or concurrence.
* * * * * *
"In order to create privity under the lien statute, there must be, in addition to knowledge of the owner that a certain person is furnishing labor or material for the contractor to be used in the execution of his contract, an express or implied assumption by the owner of a contractual obligation to pay for the labor or materials furnished. See Harper Lumber & Mfg. Co. v. Teate [98 Fla. 1055, 125 So. 21], supra. While such privity may be made out by circumstantial, as well as direct and positive, evidence, the ultimate conclusion must be made to appear that the owner voluntarily put himself in such situation toward the materialman or laborer as to make him liable on an implied agreement to pay for the labor or material furnished, not as a secondary, but as a primary debtor on the account." 145 So. at 597.
We have carefully reviewed the testimony of the witnesses in reference to the issue of privity. There is some conflict as to just what took place between Edge and Tompkins. However, even after we resolve any conflicts in favor of the sub-contractor, the evidence as a matter of law is still insufficient to establish privity.
In Foley Lumber Co. v. Koester, supra, at 638-639, the Court enumerated the factors which in that case established privity between an owner and a materialman: the owner went to see the materialman to get a price for tile work; the owner returned later to select the tile and its colors; when the time came to install the tile, the owner phoned the materialman to tell him to install the tile according to the colors, materials, and prices previously agreed upon between them; the bill for the merchandise was made directly to the owner and not the contractor; the materialman did not know the contractors and never had any conversation or agreement with them.
In contrast, the testimony in the present case shows that Edge entered into written *208 sub-contract agreements with the general contractor. He received payments under the sub-contract from the general contractor. He billed the general contractor, not the owner, for the amounts he claimed. He did not routinely correspond or communicate with the owner regarding his work. The discussion between Edge and Tompkins was a one time occurrence in which Tompkins pointed out that the fire hydrant was in the wrong place according to the construction plans and directed that it be moved. Edge filed one claim of lien for the total amount allegedly owed to him by both the owner and general contractor. His claim of lien recites that he furnished labor, services or material pursuant to a contract with the general contractor. Tompkins is shown as owner of the real property but no allegation of privity between Edge and Tompkins appears in the claim of lien.
Although we are reluctant to disturb a trial court's finding of fact, where the evidence is insufficient as a matter of law to support the finding we must reverse. The evidence in this case is not sufficient to support the ultimate conclusion that the owner voluntarily put himself in such a situation toward the sub-contractor as to make him liable on an implied agreement to pay for the labor and material furnished. First National Bank of Tampa v. Southern Lumber & Supply Co., supra.
Having determined that the judgment against Tompkins must be reversed, we do not need to consider the point raised by the cross-appeal.
REMANDED with instructions that the judgment against Tompkins Land Co., Inc., be REVERSED.
MAGER, C.J., and DOWNEY, J., concur.