UNITED STATES FIDELITY AND GUARANTY COMPANY v. A. C. MARSHALL.

4 So. (2nd) 337

Division B

Opinion Filed October 21, 1941

*Horrell & Horrell,* for Appellant;
*Baker & Thornal,* for Appellee.

CHAPMAN, J.—On May 31, 1938, the United States Fidelity and Guaranty Company obtained a judgment in the Circuit Court of Orange County, Florida, against Arthur C. Marshall for the sum of $8531.70, and on June 1, 1938, the same was duly recorded in Minute Book DD, at page 428, of the public records of Orange County, Florida, and a certified copy thereof was duly filed and recorded in the office of the Clerk of the Circuit Court of Jefferson County, Florida.

On November 30, 1923, Mary J. Kastner secured a judgment against Arthur C. Marshall and the said judgment in the sum of $56.11 on December 4, 1923, was filed in Judgment Docket No. 6, page 192, in the public records of Orange County, Florida.

On November 14, 1934, Sierks, Lane and Sierks Oil Company, Inc., secured a judgment in the Circuit Court of Orange County, Florida, against Arthur C. Marshall in the sum of $738.25 and the judgment was recorded in Judgment Docket Book 11, page 32, of the public records of Orange County, Florida.

Arthur C. Marshall filed his bill of complaint in the Circuit Court of Orange County, Florida, against the aforesaid judgment creditors, in which it was alleged that he was a resident of Orange County, Florida, the head of a family, and the owner of described real estate consisting of one-half acre of land, or less, situated within the city limits of the City of Orlando and that complainant had resided on said real estate with his family as a homestead for a period of more than twenty years at the time of filing the bill of complaint. The prayer for relief was that the aforesaid judgment creditors be permanently restrained and enjoined from levying or attempting to levy any execution based on the aforesaid judgments against the described property, because the same was exempt from levy and sale under the provisions of Sec. 1 of Art. X of the Constitution of Florida.

The United States Fidelity and Guaranty filed an answer to the bill of complaint in which it admitted many of the material allegations, but denied that Marshall was a resident of Orange County but admitted that he owned a home situated in Orlando but abandoned the same and at the time of filing the

answer Marshall was a resident of Jefferson County and that his homestead should be set apart for him on property situated in Jefferson County.

In a counter claim made a part of the answer, the United States Fidelity and Guaranty Company alleged that Arthur C. Marshall was the equitable owner of all the shares of stock of the Orlando Discount Company, a Florida corporation; that the stock in the company rested in the name of Sallie Lou Marshall, his wife, but that Arthur C. Marshall owned it all and for the purpose of defeating payment of the several judgments placed the stock in the name of his wife. The Orlando Discount Company was the record title owner of several hundred acres of farm land situated in Jefferson County and the title thereto was conveyed by Arthur C. Marshall and wife to the Orlando Discount Company, but these several deeds into the corporation were each without consideration. The counter claim prayed that the Orlando Discount Company be required to reconvey all of the real estate to Arthur C. Marshall. Prayer for process against the Orlando Discount Company and Mrs. Sallie Lou Marshall was made.

The chancellor below sustained a motion to strike the counter claim of the defendant United States Fidelity and Guaranty Company on the grounds (a) the counter claim failed to set up matters sufficient in law to defeat the prayer of the plaintiff's bill: (b) the subject matter of the counter claim is not a part of or related to the subject matter of the original bill and does not constitute proper subject matter of counter claim; (c) the counter claim in the nature of a creditor's bill is against plaintiff and additional parties and is not germane to the homestead rights

of the plaintiff vouchsafed by the Constitution; (d) the counter claim does not set up matters connected with the subject matter of the original bill of complaint, nor does the subject matter of the counter claim arise out of the subject matter of the bill of complaint. This ruling is assigned as error.

We have carefully examined the cited authorities and do not think the order complained of is erroneous under Subsec. 5 of Sec. 35 of c. 14658, Acts of 1931, Laws of Florida, commonly known as the Chancery Act; Lovett v. Lovett, 93 Fla. 611, 112 So. 768. See Lumpkin v. Brown Realty & Abstract Co., 96 Fla. 662, 119 So. 113; Dougherty v. Commercial Court Holding Co., 104 Fla. 595, 140 So. 470; Switow v. Sher, 136 Fla. 284, 186 So. 519.

It is next contended that the homestead of Marshall located at 349 North Orange Avenue in the City of Orlando was by him abandoned, as shown by the testimony, and for this reason the bill of complaint should have by the lower court been dismissed. The case of Murphy v. Farquhar, 39 Fla. 350, 22 So. 681, is cited and relied upon to sustain their view. We have carefully reviewed the cited authority in the light of appellant's contention. We find certain testimony in the record on the question of abandonment that cannot be overlooked.

Marshall acquired his Orlando home around 1916 and there established his home, and while living there, in 1937, was a candidate for the office of Mayor of Orlando. He has been a registered voter of Orange County continuously for the past several years and was such when the bill of complaint was filed in the lower court. With his wife and their two sons, now above twenty-one years of age, they lived in the home

and the issue of abandonment thereof did not present itself until about the year 1937. Numerous witnesses testified that in passing or visiting the home some member of the family would be seen about the Marshall home.

The Orlando Discount Company, of which Mr. Marshall was president, held title to a large acreage of farm land situated in Jefferson County near the Asheville community. The supervision and management of the farming activities thereof rested on Mr. Marshall, and these duties he had performed for many years past while making his home in Orlando. He had a reliable foreman or superintendent on the farm and his continuous presence on the farm was unnecessary. The superintendent left Mr. Marshall's employment and, apparently, as we gather from the testimony, Mr. Marshall attempted to assume the duties of farm foreman previously discharged by the foreman. On the farm were a tractor, several mules and employees, and with this outlay a large acreage could be cultivated. It was imperative during crop season that the farm forces should be properly directed, and during this season Mr. Marshall was not at his Orlando home but directing the growth and cultivation of crops on the farm in Jefferson County. Mrs. Marshall was there with her husband and they lived in the old farm home after some repairs were made. Mr. Marshall rented a post office box at the Greenville Post Office, where he received his mail when directing the farm activities. He made frequent week end visits to Orlando and returned on Sunday or Monday. He sold watermelons raised on the farm and organized among the farmers of the community an association for the sale of their farm

produce. The facts constituting abandonment of the homestead in the case of Murphy v. Farquhar, *supra,* are much stronger than in the case at bar. We are unable to read into the record an intention on the part of Mr. Marshall to permanently abandon his Orlando home. While it is true that he was temporarily away during the crop seasons, some few instances. in the plowing seasons, as well as harvest periods, we are unable to say from a careful consideration of the entire record that Mr. Marshall intended to permanently abondon his Orlando home. There is much substantial testimony to the effect that he did not intend to make his permanent home on the Jefferson County farm. The responsibility of supporting his family rested on Mr. Marshall and these duties he was endeavoring to discharge when directing the farm activities. Common necessity frequently requires the bread earner to labor away from his family and home so as to sustain dependents and we deduce from the testimony that Mr. Marshall was so engaged. See Read v. Leitner, 80 Fla. 574, 86 So. 425; Nelson v. Hainlin, 89 Fla. 356, 104 So. 589.

The presumption of correctness is attached to the conclusions of fact reached by a chancellor, and the showing made by the appellant has not overcome this presumption. There is much substantial testimony to sustain the findings of the chancellor.

Counsel for appellant presents another question for adjudication by this Court, but in view of the fact that the allegations and prayer for relief of the stricken counter claim can or may at a subsequent date be the subpect matter of an independent suit in equity involving the several conveyances by Mr. Marshall and wife, Sallie Lou Marshall, into the Orlando

Discount Company of the farm lands situated in Jefferson County, we have concluded not to rule upon the same, especially in light of the contention that these several conveyances were without consideration and made to defeat the payment of the judgment of the appellant.

We fail to find error in the record.

Affirmed.

BROWN, C. J., TERRELL and THOMAS, J. J. concur.