61 So.2d 634 (1952)
FOLEY LUMBER CO. et al.
v.
KOESTER et al.
Supreme Court of Florida, Special Division B.
November 21, 1952.
*635 Latham & Elmore, Jacksonville, for appellants.
Rogers, Towers & Bailey, C.D. Towers and Taylor Jones, Jacksonville, for appellees.
GORDON, Associate Justice.
This suit was instituted by the appellants, Foley Lumber Company, a materialman, and H.W. Moyer, d/b/a Moyer Marble and Tile Company, a tile subcontractor, seeking to enforce a lien against the home of the appellees, E.A. Koester and Lucile I. Koester, his wife, for building materials and tile work furnished during the construction of their home. As the facts are not the same in the Foley case as they are in the Moyer case, they will be discussed separately.
The record in the Foley case discloses that the Koesters, who were the owners of the property against which a lien is claimed, desired to build a home.
In August, 1951, they discussed with Leeds and Brinn, the contractors, their desire. Mr. Leeds said he "understood" he had a cost plus 5% deal with the Koesters to build and construct the house. The Koesters, on the other hand, said there was no cost plus contract but instead that they at all times wanted to build only if they had a firm contract for a fixed price.
On or about September 7th or 8th, work was started on the property in question by the digging of ditches for the foundation.
On September 28th, after some discussion on September 27th, a contract was executed by the Koesters and Leeds and Brinn providing that the Koesters would pay $15,000 for the home to be constructed and Leeds and Brinn agreed to "furnish all materials and perform all work necessary" to complete the home, "the total expenses *636 of all labor and materials shall not exceed $15,000.00 Dollars".
Prior to September 27th, Leeds and Brinn had told Foley Lumber Company that they were building this job on a "cash" basis. Foley, thereupon, began to furnish materials to the Koester job and billed the materials to S.E. Leeds, one of the contractors. At no time were any materials billed or charged to the Koesters, nor did Foley deal with the Koesters in any way.
The testimony further revealed that Leeds requested Koester to make one check for $3,000, payable direct to the Foley Lumber Company, which was done, and the amount credited to Leed's account.
In January, 1951, several months after the date of the execution of the contract, Koester discovered that some workmen were having difficulty getting their money from Leeds and after paying the workmen he decided to check further. He went with Leeds to Foley Lumber Company and there found out for the first time that a large bill was still due Foley for materials furnished in the construction of his home.
At that time, Koester only owed to the contractors, Leeds and Brinn, the sum of $446.95, having paid the difference in that amount and $15,000 to the contractors under the terms of the contract.
Foley claimed Koester should pay them in full and Koester claimed the extent of his liability was only for the contract price. Foley then filed a lien and this action was commenced. It is admitted that no cautionary notices were given by Foley to the Koesters. Koester, having withheld the sum of $446.95 from the contractors, deposited that sum into the registry of the court.
The court below referred the cause to a special master to take testimony and he submitted the following conclusions:
1. That the Koesters entered into a contract with Leeds and Brinn, for the construction of their home for a definite price of $15,000.
2. That a proposition submitted by Moyer was never accepted in writing, though apparently Moyer did work on the basis of the proposition, and found an unpaid balance due to Moyer of $705.
3. That there was no cautionary notice given by any of the lien claimants.
4. That the total amount due the lien claimants from the Koesters was $446.95, which sum had been paid into the registry of the court.
Exceptions were filed by the appellants, Foley Lumber Company and Moyer, and the court below entered a final decree confirming the master's report, excepting only the conclusion of law that the appellant, Moyer, was entitled to share in the fund of $446.95, paid by the Koesters into the registry of the court, and entered judgment against the contractors in favor of Moyer, for the entire amount due in the sum of $705, from which order the appellants have perfected this appeal.
This court has consistently held that a materialman's lien, being strictly statutory, requires that before a lien claimant can enforce his lien, he must allege and prove a strict compliance with every requirement of the statute. Southern Paint Manufacturing Company v. Crump, 132 Fla. 799, 182 So. 291. We have also recognized that one of the cardinal purposes of the Mechanics' Lien Law was to protect the laborer in the collection of his wages. See Florida Fruit Co. v. Shakelford, 145 Fla. 216, 198 So. 841.
A careful examination of the Mechanics' Lien Law, Section 84.01 et seq., Florida Statutes 1941, F.S.A., will reveal that there is provided therein adequate means of protection for the laborers, materialmen, and subcontractors, but such lienors must avail themselves of the protection afforded them by the statutes. A materialman cannot sit idly by extending unlimited credit to the contractor, month after month, permitting the owner to make progress payments in good faith to the contractor and then expect the owner to pay for the house a second time. See Hendry Lumber Co. v. Bryant, 138 Fla. 485, 189 So. 710. This is especially true when there is a contract between the contractor and the owner, as appears in the instant case at bar, that is entered into in good faith setting forth the *637 total contract price. This contract is binding upon a materialman dealing with the contractor and not the owner in the absence of any fraud in the original contract or in the amount of payment made to the contractor. See Trustees Wylly Academy v. Sanford, 17 Fla. 162.
It is apparent from the testimony that the appellant, Foley Lumber Company, did not fully know or understand the arrangement between the contractor and the owners. It frequently happens in the construction of buildings that the materialman, in dealing with the contractor, will not know under what arrangements the contractor is operating or what amounts are due or to become due to the contractor. In this regard, the Mechanics' Lien Law, section 84.25, F.S.A., provides adequate protection for the materialman as follows:
"(1) A copy of the contract of a contractor or sub-contractor and a statement of the amount due or to become due thereon, shall be furnished by the owner or contractor, party thereto, upon demand of a lienor contracting with or employed by the other party to such contract."
The effect of a refusal or neglect to furnish a copy of the contract, or a willful and false statement, is "that the lienor may proceed to judgment and execution against the person primarily liable for the debt and if execution is returned wholly or partly unsatisfied, the owner or contractor of whom the copy or statement was demanded, shall be liable for the loss sustained by the lienor, and (shall) be enforced in the same manner as if such labor, services, or materials had been directly performed for or furnished to such owner".
The materialman in dealing directly with the contractor in the construction of an improvement upon property, will tend to place his confidence in and trust the contractor rather than the owner. It is upon his same theory of confidence and trust, or fear of offending the contractor, that the materialman has often delayed to his detriment the filing of his notice of intention of claiming a lien upon the owner. Section 84.04(1) (a), Florida Statutes 1941, F.S.A., provides that "* * * any lienor, or any prospective lienor may, before beginning, or within thirty days after beginning but not later than the day of completing his labor or services or his furnishing of materials, give to the owner a written notice of intention to claim a lien * * *." This in effect requires the owner to retain funds in his hands for the satisfaction of said claims. Section 84.05 (8).
Although a materialman's lien may be valid without the necessary compliance with Section 84.04, Florida Statutes 1951, F.S.A., where there is a valid contract in existence between the contractor and the owner, the materialman will be allowed to recover from the owner only to the extent that there is remaining with the owner money unpaid to the contractor.
The law specifically provides that the aggregate of all liens may not exceed the unpaid balance of the contract price at the time the lienors perfect their liens either by giving notice of intention to claim a lien or by filing and serving on the owner a claim of lien. Section 84.02, F.S.A. 1941, F.S.A., provides:
"* * * The aggregate amount of all liens allowed under this chapter for performing labor or services or furnishing materials covered by any certain direct contract shall not exceed the amount of the contract price fixed by said direct contract as diminished by the amount of any money `properly paid' by the owner under such contract, according to the meaning of the words `properly paid' as set out in § 84.05."
A materialman's lien may be created, either as a direct lien arising from privity of contract between the materialman and owner or as a derivative lien arising from a contract between the materialman and the contractor. The extent of the liability of an owner and an owner's property for materials furnished by a materialman will depend upon whether privity of contract exists between the materialman and owner, and, if there is not privity of contract with the owner, the extent to which the materialman has complied with the provisions of the Mechanics' Lien Law.
*638 Where a materialman furnishes material pursuant to a direct contract with the owner or where "privity of contract" exists between the owner and materialman, it is not necessary for the materialman to file any claim of lien; the materialman has a lien to the extent of the full value of the materials furnished and sold to the owner and suit may be brought to enforce the lien within twelve months of the date of furnishing the last materials. Sec. 84.23(3). Hendry Lumber Co. v. Bryant, 138 Fla. 485, 189 So. 710; State ex rel. Gore v. Chillingworth, 126 Fla. 645, 171 So. 649.
However, where a materialman sells materials to a contractor who is constructing improvements upon an owner's property, the materialman has a derivative lien; that is, his lien and rights are derived through the contractor. The extent to which the materialman may enforce such lien against the owner depends upon the extent to which he complies with the requirement of the Mechanics' Lien Law in perfecting his lien.
The appellant, Foley Lumber Company, neither filed any cautionary notice of intention to claim a lien nor gave any notice to the owner, nor dealt with or met the owner, until the house was substantially completed and only a small balance of $446.95 remained unpaid upon the contract price, at which time there was in effect a valid contract between the owner and contractor. Their failure in this regard left them with a valid and enforceable lien only against the unpaid balance of the contract of $446.95 and the lower court so ruled.
The appellant, Foley Lumber Company, contended that the Koesters are liable for the full amount of its claim for materials and labor supplied, upon the theory that the contractor, Leeds and Brinn, were "agents" of Koesters in the purchase of the materials. Upon our examination of the testimony we find no merit in said theory. In the case of Tallahassee Variety Work v. Brown, 106 Fla. 599, 602, 138 So. 759, 144 So. 848, 851, this court declared:
"It is alleged that the contractor purchased from the complainant the supplies listed in Exhibit B, and that Temple was employed by the contractor to paint the house, and that Temple procured the paint supplies from the complainant listed in Exhibit C. The fact that Brown knew that his contractor or subcontractor was purchasing the materials and afterwards agreed to pay for them and did pay for some of them did not create in favor of the complainant a lien upon the land and building erected upon it for the supplies furnished, nor did such a lien exist in complainant's favor until the statutory cautionary notice was served upon the owner or her agent by the complainant, and then only to the amount unpaid on the contract at the time of the notice. * * *
"That is true because of lack of privity of contract between the owner and the materialman. If there was privity of contract between the owner and materialman, the latter would have a lien for the amount of materials furnished to the owner. * * *
"Such privity of contract does not exist in the first instance, and, unless some other relation between the parties owner and materialman is established which creates a privity of contract between them independently of the contractor and owner, the materialman must of necessity depend upon his cautionary notice for his lien and upon the amount then due the contractor by the owner for the extent or amount of it."
It is the contention of the appellant, H.W.M. Moyer, a Tile Contractor, that he furnished materials and negotiated a contract directly with the owners, and therefore was in privity of contract with said owners, rendering it unnecessary for the appellant, Moyer, to file a notice of intention to claim a lien in order to procure a valid lien against the property for the full value of the materials furnished.
In connection with the claim of appellant, Moyer, from the testimony given by Mr. Koester, it appears that Mr. Koester went to see Mr. Moyer with a set of plans of his house to get a price for the tile work, Mr. Moyer giving him a signed proposal at that time. Later it appears that Mr. and Mrs. Koester returned to select the *639 tile and its color, Mr. Moyer, personally, showing the Koesters the tile. When the time came to install the tile, Mr. Koester phoned Mr. Moyer to install the tile according to the colors, materials, and price previously agreed upon between them. It will be noted that the bill for the merchandise was made out directly to Mr. and Mrs. Koester and not to the contractors. The testimony of Mr. Moyer is uncontradicted that he never knew either Mr. Leeds or Mr. Brinn, the contractors, and never had any conversation or agreement with them.
This court has held that privity of contract between the owner and materialman under the lien statute may be made out by circumstantial, as well as direct and positive evidence.
As has been pointed out in the case of the First National Bank of Tampa v. Southern Lumber & Supply Co., 106 Fla. 821, 145 So. 594, 596:
"The word `privity' as used in the lien statute, providing for the acquisition of liens by persons in privity with the owner, against the latter's real property, is not employed in the technical sense of the common law, but implies special knowledge showing active consent or concurrence.
* * * * * *
"In order to create privity under the lien statute, there must be, in addition to knowledge of the owner that a certain person is furnishing labor or material for the contractor to be used in the execution of his contract, and express or implied assumption by the owner of a contractual obligation to pay for the labor or materials furnished. See Harper Lumber & Mfg. Co. v. Teate [98 Fla. 1055, 125 So. 21], supra. While such privity may be made out by circumstantial, as well as direct and positive, evidence, the ultimate conclusion must be made to appear that the owner voluntarily put himself in such situation toward the materialman or laborer as to make him liable on an implied agreement to pay for the labor or material furnished, not as a secondary, but as a primary debtor on the account."
In Harper Lumber & Mfg. Co. v. Teate, 98 Fla. 1055, 125 So. 21, 23, we held the following:
"If a materialman, upon the request or by the authority of the owner, furnishes material to a contractor in reliance upon the promise of the owner, express or implied, to pay for it, credit being extended to the owner, so that the owner becomes a primary debtor and not a mere surety, the materialman is in privity with the owner within the purview of the lien statutes, and is entitled to a lien for the full amount of the debt, notwithstanding he gave no notice to the owner, as required by section 5381, Comp.Gen.Laws 1927 [F.S.A. § 85.26], as to persons not in privity with the owner. Wahouma Drug Co. v. Kirkpatrick Sand [& Cement] Co., 187 Ala. 318, 65 So. 825; Delta Lbr. v. Wall, 119 Miss. 350, 80 So. 782; * * * Janvrin v. Powers, 79 N.H. 44, 104 A. 252; Willer v. Bergenthal, 50 Wis. 474, 7 N.W. 352; Ambrose Mfg. Co. v. Gapen, 22 Mo. App. 397; Wisconsin Planing Mill Co. v. Grams, 72 Wis. 275, 39 N.W. 531."
From our careful study of the facts as reflected in the transcript and the holding of the master and lower court and after carefully examining the able briefs prepared by counsel for the respective parties, we have concluded that as relates to the appellant, Foley Lumber Co., the court below was sound in its ruling and all matters and decisions pertaining to said appellant will not be disturbed. On the other hand, there is abundant testimony established by the record, that the appellant, Moyer, was in privity of contract with the owner and is entitled to his claim of lien against the property of the appellees, Koesters, for the full amount of materials furnished to said property in the amount of $705.
This court is mindful of the general rule that the decision of the court below is presumed to be correct and should not be disturbed on appeal, U.S. Fidelity & Guaranty *640 Co. v. Marshall, 148 Fla. 286, 4 So.2d 337, Harmon v. Harmon, Fla., 40 So.2d 209, Scheneman v. Barnett, Fla., 53 So.2d 641, yet where the lower court misapprehends the legal effect of the evidence as an entirety, the findings of the court should not be sustained. See Newman v. Smith, 77 Fla. 633, 82 So. 236.
For the reasons hereinabove stated, the judgment appealed from is affirmed as to the appellant, Foley Lumber Co., and reversed as to the appellant, H.W. Moyer, and the court below is instructed to enter judgment accordingly.
SEBRING, C.J., and MATHEWS and ROBERTS, JJ., concur.